Pormann, Appellant, vs. Walsh and wife, Respondents.

*October 4 — October 22, 1897.*

*Building contract: Conditions as to performance to the satisfaction of both architect and owner: Supplemental contract.*

1. A building contract by which the contractor agrees to perform the labor and furnish the materials "to the satisfaction of the architect . . . and to the satisfaction of the owner" is binding upon him, and, even though he obtains the certificate of the architect, the owner may withhold his approval or satisfaction with the work so as to defeat a recovery of payment therefor, provided he does not do so unfairly or capriciously.

2. If, on receiving payment on the architect's certificate of part of the contract price, such contractor signs an indorsement thereon that

the payment is received with the understanding that all the defective plastering in said house shall be made perfectly satisfactory before any further payment shall be made on the contract, he is bound by such new contract and must perform it before he can recover anything more on the original contract.

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. · *Affirmed.*

This action was brought to recover from the defendants the sum of $125, which was claimed as a balance due on a written contract by which the plaintiff, a plastering contractor, agreed to lath and plaster the house of the defendant *F. A. Walsh* for an agreed price of $675, in accordance with certain plans and specifications prepared by one Fred. Graf, who was declared to be the architect and superintendent of the building, and "to the satisfaction of the owner of said premises and building, to wit, *F. A. Walsh*," and to recover the sum of $74.35 for extra work thereon.

The defendants paid the plaintiff on account $550, and they alleged that the plastering of the house had not been, and was not, to the satisfaction of said *F. A. Walsh;* that the whole of said plastering done and materials used therein were and are wholly unsatisfactory to him, in that said plastering — which consisted of two coats, to wit, a so-called "adamant coat" and so-called "sand-float coat," placed upon said adamant coat — was so defectively done, and the materials used therein were of such poor quality, that shortly after said plastering was finished by the plaintiff the outer coat, to wit, the said coat of sand float, peeled off and fell off from said adamant coat, so that the same had to be removed and a new coat put in place thereof. It was alleged that the payments were made in two sums, one of $350, March 7, 1893, and $200, April 11, 1893, and that each of them was made in pursuance of the contract, to the effect that payments should be made upon certificates and estimates in writing to be furnished the plaintiff by said archi-

tect and superintendent; that each of them was to the effect that the sum therein named was due to the plaintiff by the terms of said contract, "subject to owner's approval." At the time the payment of $200 was made, a receipt was indorsed upon the estimate therefor, signed by the plaintiff, wherein it was expressly stipulated that all the defective plastering then being in said house, and which had been done by said plaintiff, "should be made perfectly satisfactory before any further payments on account of said work or materials should be made;" that notwithstanding said stipulation the plaintiff had refused to put said defective plastering in a condition satisfactory to the defendant *F. A. Walsh*, or to put the same in a proper, good, and workmanlike condition.

The defendant pleaded by way of counterclaim the failure of the plaintiff to properly perform his said contract, and that he relied upon his superior knowledge and experience in respect thereto, he being a professional plasterer; that the work had the appearance of being done properly, and the defendants were assured by the plaintiff that it had been done in a good and workmanlike manner, and, relying upon such representations and guaranty by the plaintiff, the defendant thereafter caused such plastering to be painted and tinted in the manner which he had contemplated, for which the said defendant expended and incurred liabilities in the sum of about $300. And it was alleged that the greater part of the sand-float coat peeled and fell off from said adamant coat in consequence of the improper preparation of the material used in the plastering, and the improper and unskilful work of putting it onto the inner walls of said building; that when said defects were discovered the plaintiff's attention was called thereto, and he was requested to repair the same; that he did repair a part of said plastering, which constituted the extra work charged for in the complaint, but after he had repaired a part of said defective work he refused to proceed to correct the remainder of said work, and

abandoned the same, whereupon the defendants were compelled to procure other plasterers and artisans to repair the remainder of said work, and expended $204.95 in and about the same; and that the woodwork of the building which had been finished was necessarily damaged thereby to a considerable extent, which had also to be repaired,— and claimed damages, in all, by reason of the premises, in the sum of $504.95.

Plaintiff, in reply, denied the allegations of the counterclaim, and alleged that the work was done to the satisfaction of the architect and superintendent, who had issued to the plaintiff his certificate to the effect that he was entitled to his final payment on the contract.

The issues were tried before the court. The plaintiff produced the certificate of Fred. Graf, superintendent, certifying that plaintiff, the contractor for the lathing and plastering of the house, was entitled to the payment of $125, by the terms of the contract, in full on the contract.

The last stipulation of the contract, written upon the margin, was as follows: "And it is further agreed that the work done and materials furnished shall be to the entire satisfaction of Fred. Graf, architect, who is hereby declared to be the superintendent of the building, *and to the satisfaction of the owner.*" It appeared that under date of March 17, 1893, the architect issued a certificate to the plaintiff that he was entitled to a payment of $350, by the terms of the contract, "subject to owner's approval," which sum was paid by the defendant under the belief that the work was in accordance with the contract. Under date of April 11, 1893, the architect issued to the plaintiff another certificate that he was then entitled to a payment of $200 by the terms of the contract, "subject to owner's approval." It was shown that when that certificate was presented to the defendant some of the second coat of the plastering seemed likely to fall away from the first. Therefore, at the time of the payment

of the $200 called for by that certificate, and in consideration thereof, the defendant *Walsh* obtained from plaintiff an indorsement thereon, over his signature, as follows: "Received of *F. A. Walsh* the within amount of certificate, and on the express understanding that the defective plastering will be made perfectly satisfactory before any further payment is made." After the $200 was paid, upon the condition indorsed on the certificate, the plaintiff undertook to repair some of the plastering that had peeled off, but refused to do any more repairing when it was found that the greater part of the second coat was about to peel off, and afterwards made claim for the work done and materials used in making the repairs that he did make, as extra work.

There was testimony tending to show that several weeks after the plastering had been completed the defendant had the plastering tinted, painted, and decorated; that before this work was begun there appeared to be a defect in the plastering, whereupon he had the plaintiff come to the house and see it, with the decorator, and he then said "it was all right;" there "was no need to worry about it; to go right on; to tint it and paint it, and he would guarantee it was all right." Nearly all the tinting and painting had to be done over after a new second coat of plastering had been put on in place of the second coat that had peeled off. After the work of replastering and repainting had been done by other men employed by the defendant, the architect delivered to the plaintiff the final certificate mentioned, certifying that the latter was entitled to the balance of $125 under his contract. Payment of this, as well as the demand for extra work and materials, was refused.

The court found, upon the issues: (1) That the contract mentioned in the pleadings in said action required work to be done and materials to be furnished in and about the lathing and plastering of the house of the defendant, to be to his satisfaction. (2) That the plastering that was done

by the plaintiff under said contract was not, and is not, to the satisfaction of said defendant. (3) That there was reasonable cause for said defendant to be dissatisfied with said plastering, in that the outer coat, which constituted a so-called sand float, failed properly to adhere to the first coat of said plastering, made of material called adamant, and in that the greater part of said second coat of such plastering, made of sand float, peeled off from said adamant coat, so that nearly the whole of said coat of sand float had to be removed, and a new coat of plastering put in place thereof; that defendant necessarily expended in removing said second coat of sand float the sum of $80, and, for replastering in place of said second coat so removed, the sum of $124.95, and for repainting and refinishing inside work, made necessary by the peeling off and necessary removal of said coat of sand float or plastering made by said plaintiff, the sum of $300,— making a total expenditure of $504.95, which became necessary by reason of said defective work.

As conclusions of law the court found (1) that the plaintiff was not entitled to recover any part of the unpaid price claimed by him, and that his complaint should be dismissed; (2) that the defendant is entitled to recover from the plaintiff, upon his counterclaim, the sum of $504.95, with interest thereon from October 7, 1893. Judgment was given against the plaintiff accordingly, from which he appealed. Exceptions were taken, both to the findings of fact and conclusions of law.

*A. J. Eimermann,* for the appellant, argued that, the defendant having chosen a person fit and competent to decide as to the performance of the contract and the latter having certified to such performance, must abide by his determination, unless such architect acted in bad faith or issued the certificate in fraud of the defendant's rights. *Forster L. Co. v. Atkinson,* 94 Wis. 578; *Wendt v. Vogel,* 87 id. 462; *Bentley v. Davidson,* 74 id. 420; *Tetz v. Butterfield,* 54 id. 246; *Hud-*

*son v. McCartney,* 33 id. 331; *Boettler v. Tendick,* 5 L. R. A. 270.

For the respondents there was a brief by *Sylvester, Scheiber & Orth,* and oral argument by *F. Scheiber.*

PINNEY, J. 1. The evidence clearly sustains the findings of the circuit court. The only question worthy of particular consideration is whether the plaintiff was entitled to recover $125, the unpaid portion of the contract price which was to be paid to the plaintiff for performing the contract, and what effect should be given to that part of the contract which provides "that the work done and materials furnished shall be to the entire satisfaction of Fred. Graf, who is hereby declared to be the superintendent of the building, and *to the satisfaction of the owner,*" and the certificate of the architect that the contractor was entitled to specified payments "subject to owner's approval." It is contended on the part of the defendant that by the contract such approval on his part was a condition precedent to recovery for work done under it, as well as the certificate of the architect. We know of no reason why the parties might not lawfully make the contract in this respect as they did in the present case, or why it should not be enforced as made. In Hudson, Building Cont. (2d ed.), 274, it is said: "Work is sometimes agreed to be done to the approval of the engineer *and* the employer, and sometimes to the approval of the engineer only. In the former case the engineer may disapprove or approve unreasonably, and his approval would be a condition precedent to payment. The only benefit to a building owner of such a condition is that if the architect approves unreasonably, to the detriment of the building owner, the building owner might still disapprove, but only reasonably; and it would seem unreasonable for him to disapprove (fraud or collusion apart) when his architect has approved, inasmuch as by the selection of the architect he has fixed the standard by which

the work is to be tested. The builder could bring an.action (in the event of the employer's disapproval), and it would be a question for the jury whether the work was reasonably in accordance with the contract." The evidence disclosed abundant cause for the owner's refusal to withhold his approval of the work. The plaintiff insists that the certificate of the architect is conclusive, and that it is not a condition precedent to a recovery of the unpaid portion of the contract price that the work had been done "to the satisfaction of the owner." We do not see any ground upon which the court can refuse to give full force and effect to this provision of the contract as the parties have written it. If the contractor fairly obtains the certificate of the architect, the building owner cannot unfairly and capriciously withhold his approval or satisfaction with the work, so as to defeat a recovery for proper performance.

2. With respect to the $125 claimed by the plaintiff, he substantially entered into a new agreement by signing the indorsement on the last certificate, to the effect that the amount of that certificate ($200), which was paid to him, was received "on the express understanding that the defective plastering will be made perfectly satisfactory before any further payment is made." We are unable to see any ground upon which the plaintiff, in view of the circumstances, can recover the $125 claimed, and it follows that the judgment of the circuit court must be affirmed.

*By the Court.*— The judgment of the circuit court for Milwaukee county is affirmed.