Jos. J. SHIMEK, doing business as Shimek Construction, Plaintiff and Respondent,

v.

Anton VOGEL and Ruth Vogel, Defendants and Appellants.

No. 7872.

Supreme Court of North Dakota.

Nov. 1, 1960.

Alfred A. Thompson, Bismarck, for plaintiff and respondent.

Jansonius, Fleck, Smith, Lynch, Mather & Strutz, Bismarck, for defendants and appellants.

HARRY E. RITTGERS, District Judge.

This is a trial de novo in an action brought to determine the amount due plaintiff under a contract with defendants for the construction of a building, and to foreclose a mechanic's lien. Plaintiff recovered judgment awarding him $7,001.52, with interest from September 26, 1956, and for costs, and for the foreclosure of the lien. Defendants have appealed from that judgment.

Plaintiff's complaint alleges that the original contract price was $48,430.60; that plaintiff has been paid thereon the sum of $41,312; leaving a balance due thereon in the sum of $7,118.60. The complaint further alleges that various changes were made during the course of construction at the request or with the consent of defendants, and that pursuant thereto plaintiff has furnished the necessary labor and materials required for such extra work amounting to the further sum of $4,650.98, making a total amount now due plaintiff in the sum of $11,769.58.

Defendants' answer consists of a general denial and a counterclaim, to which there was a reply. The answer admits that on or about May 7, 1956, defendants made an agreement with plaintiff for the construction of the building in question. The counterclaim was for the sum of $20,000, and as the basis thereof defendants alleged numerous defects and unauthorized changes in the work of construction.

The trial court allowed plaintiff on the "extras", $1,593.52, and allowed defendants on their counterclaim the sum of $1,710 leaving a difference on those items in favor of defendants in the sum of $116.48. The trial court stated said amounts as follows:

| | |
|---|---|
| Due on contract | $48,430.00 |
| Less amount paid by defendants | 41,312.00 |
| Balance | 7,118.00 |
| Less difference owing defendants | 116.48 |
| Total amount due plaintiff | $ 7,001.52 |

In support of their counterclaim defendants on the trial offered evidence tending to show that if the building had been constructed according to the contract its value would be much more than the value of the present building.

■ Whether such evidence is admissible depends upon the facts. The transcript of the proceedings in the lower court comprises a total of 660 pages. We have carefully read and analyzed the full record. For reasons which will appear from our later discussions, we hold that there was a substantial completion of the building by plaintiff under the terms of the contract and an acceptance thereof by defendants, reserving to defendants the right to oppose plaintiff's claims for "extras" and to counterclaim for damages on account of defects in the work. The changes made by plaintiff were consented to or waived by defendants who accepted and took possession of the building. Evidence as to the value of the building was therefore not relevant to the issues.

The contract in question is Exhibit 3 and was signed by the parties on May 7, 1956. It was composed by plaintiff after several conferences had been held concerning the building defendants desired. Plaintiff is an experienced builder of commercial buildings in the Bismarck area. Defendant Anton Vogel, has for several years operated a general plumbing and heating business in the same city. He testified that he had the experience of building about a dozen dwelling houses in the Bismarck area. The defendant Ruth Vogel, is Anton Vogel's wife and partner in the business, and is the bookkeeper and office manager. Defendants

own the site on which this building was placed. It was mutually agreed by the parties that no architect should be hired to prepare plans and specifications or to supervise and direct the work of construction, and that plaintiff should prepare all necessary plans. Exhibit C is an estimate prepared by plaintiff of the cost of materials and labor required, and upon which his bid was based. Exhibit 5 was the plan of the proposed building prepared by plaintiff. These exhibits were frequently referred to by the parties in connection with their operations under the contract, Exhibit 3, and are properly treated as parts of the contract.

■ As we view the evidence we find no proof of intention on the part of the defendants to refuse to accept the building. In fact, while defendants protested at various times concerning various changes in the work, such protests appear to have been merely expressions of some dissatisfaction. Defendants in no instance insisted that any work be torn out or replaced. Some of the changes in the course of construction were made on the direction of the defendants, some were on plaintiff's initiative, and some were openly agreed to by both parties in advance. Where objections were made by defendants and no further action was taken, defendants must be held to have acquiesced in the changes made by plaintiff. A good instance on this point is presented in the change in the construction of the ceiling. The contract described the material to be used and the method of constructing the ceiling in detail. The defendants undertook the construction of this building in the first instance for the purpose of renting it to Mr. Zahn as a bowling alley. The contract stated that the building should be completed by September 15, 1956, but time of completion was not made of the essence of this agreement. Both Mr. Vogel and Mr. Zahn were anxious to have the building ready for use as soon as possible. Both were urging an early completion of the work. When plaintiff reached the point of constructing the ceiling he was not able to secure the materials required by the contract. Plaintiff substituted other material without consulting defendants. When the ceiling was partly built defendant Anton Vogel informed plaintiff, "It is not the ceiling I want." Plaintiff testified the ceiling cost him considerably more money than the cost of the ceiling contracted for would have been, and he asserts the change was made to enable Mr. Zahn to commence business much earlier than would otherwise have been possible. In this instance plaintiff testified that when he informed Mr. Vogel it would be necessary to make the change, Mr. Vogel said, "Go ahead, anything to get the job done." Vogel in his testimony denies making this statement. The witness Harney, who is in the flooring and acoustics business testified, and this testimony is not disputed, that there was very little difference between the ceiling built and the one specified, and that Mr. Shimek did some extra work on the ceiling at the request of Mr. Zahn. Mrs. Vogel testified that she asked Mr. Shimek, "How come we are getting that kind of a ceiling?" and that Shimek replied, "That is the only way I can get the building done so Zahn can occupy it." Mrs. Vogel testified that she then told Shimek, "That isn't the ceiling I want." No other protest was made or other action taken at any time regarding the ceiling by either of the defendants. Testimony of other witnesses was that the ceiling as built was as good as that contracted for.

The objections of the defendants and the differences between the parties in regard to the ceiling may fairly be said to be representative of the objections and differences in regard to the other changes and to the attitude and conduct of both parties in regard thereto. We therefore are constrained to hold that the changes in the work of construction made by plaintiff were consented to by the defendants.

■ As will appear from our later consideration of the claims of defendants under their counterclaim, the defects were remediable or compensable and do not invalidate the contract. Consequently, it

must be further held that there was substantial performance of the contract by plaintiff, and the question of substantial performance is not an issue in this case. But substantial compliance with the contract does not absolve a builder from responding in damages for his omissions and derelictions. The measure of the allowances to the owner must necessarily be a sum that will compensate him for the injury resulting from such omissions and derelictions. The defects in this case were not irremediable. Karlinski v. P. R. & H. Lumber & Construction Co., 68 N.D. 522,

281 N.W. 898; Foeller v. Heintz, 137 Wis. 169, 118 N.W. 543, 24 L.R.A.,N.S., 327; Fargo Glass & Paint Co. v. Smith, 66 N.D. 389, 266 N.W. 100.

Plaintiff's claims of right to recover for extras under the contract in question are all included in a statement prepared by him and attached to the claim for a mechanic's lien upon which this action is based. We quote this statement, but for convenience of reference have numbered each item, and we will dispose of these claims in the order noted.

| | | | |
|---|---|---:|---:|
| 1 | Extra Excavating | $ 236.00 | |
| 2 | Extra on basement concrete used, 215 yds. | 1015.00 | |
| 3 | 900# Reinforcing Steel | 136.00 | |
| 4 | Trucking and handling steel | 25.00 | |
| 5 | 10% for overhead and profit | 211.00 | |
| | | | $ 1613.00 |
| 6 | Extra on planter brick used 512 brick at $8.50 per 100 | 43.52 | |
| 7 | Extra on 4″ angle on bldg a bearing for Steel Joist | 309.78 | |
| 8 | Extra steps to Basement | 50.00 | |
| 9 | 3 Extra Long Span Joists | 673.47 | |
| 10 | 8 Extra Short Span Joists | 383.91 | |
| 11 | Extra on structural steel, heavier steel | 18.49 | |
| 12 | Extra on 1 column | 45.60 | |
| 13 | Short beams for Dakota Plate & Glass Co. | 72.08 | |
| 14 | Sales Tax | 23.87 | |
| | | | $ 1620.72 |
| 15 | Extra labor erecting steel joists | 50.00 | |
| 16 | Extra welding, Beams and joists | 15.00 | |
| 17 | Commission on $1620.72, 10% | 162.00 | |
| 18 | Commission on $6292, Dakota Plate & Glass | 629.20 | |
| | | | $ 856.20 |
| | | | 4089.92 |
| 19 | Extra on Front for Dakota Plate | | 561.06 |
| | | | $ 4650.98 |

The items numbered 1, 2, and 3, relate to the cost of installing a basement in the southwest corner of the building. There is no question under the evidence that this was extra work not contemplated by the contract and that it was done at the request of the defendants. As to Item No. 1, the evidence shows that the basement so excavated was 21 x 22 ft. in area. It is located in the extreme southwest corner of the building, where the natural surface of the land was at least 7 ft. lower than at the northwest corner. The elevation of the ground at the north end of this basement was about two feet higher than at the south end. The depth of excavation on

the south side would be not in excess of 3 ft., while on the north side it would be 5 ft., with the average depth at 4 ft. This gives the amount to be excavated at 68 cu. yds. The cost according to Exhibit 22 is $.65 per yard or a total of $44.20.

As to Item No. 2, Mr. Shimek stated that the total length of the two sides of the concrete basement wall was 43 ft., and that the height was 9 ft. There is no evidence showing the thickness of the walls and we assume it was 8 inches. Mr. Shimek testified he thought the depth of the floor was 4 inches. This makes a total of 15 cu. yds. of concrete, the cost of which according to Exhibit 20 is $14.60 per cu. yd., or a total of $219. Basing our estimate on other Exhibits in the file, it would appear that there should be allowed for labor in pouring the basement floor and walls the further sum of $100.

As to Item No. 3, the ceiling of the basement, Mr. Shimek testified that the steel and concrete slab placed in the ceiling weighed about 900 lbs. in all, and that the cost of the material and labor was $136.

Item No. 4 is rejected. It is not supported by any evidence and apparently was a charge for hauling "extra steel" items which are rejected herein.

Item No. 5 is rejected.

Item No. 6 is allowed in the amount of $43.52. It was a necessary installation and the defendants used plaintiff's bricks of this value in the construction of the planter.

Item No. 7 was necessary in order to meet the requirements of the city ordinances of Bismarck, and is rejected. Mr. Kavaney testified: "The Bismarck Building Code requires that walls have a lateral support not over eighteen times the wall thickness, and this can be either vertical or horizontal. The original plan did not include such supports and this angle iron is used, by welding, to tack the roof decking on the ends of the building."

As to Item No. 8, this extra work was done pursuant to the request of the defendants and is allowed in the sum of $50.

Items numbered 9, 10, 11, 15, and 16, are all rejected, and Item No. 7 is in the same category. The expense for these items was incurred by reason of the mistake of the plaintiff himself. He ordered the structural steel from the Fargo Foundry and apparently did not specify the weight-bearing capacity of 40 pounds per sq. ft. which was required under the city ordinances of Bismarck and the steel sent from the Foundry and which was installed by plaintiff was of a weight-bearing capacity of 30 pounds per sq. ft. The city officials of Bismarck required heavier steel or additional steel support and side stress support (angle iron) to be installed. There was an implied agreement on the part of the contractor under his contract to comply with the ordinance.

"Every contract is made with reference to, and subject to, existing law, and every law affecting the contract is read into and becomes a part of the contract." McWilliams v. Griffin, 132 Neb. 753, 273 N.W. 209, 214, 110 A.L.R. 1039; Long v. Owen, 21 Idaho 243, 121 P. 99, Ann.Cas.1913D, 465.

City ordinances are held to come within the rules just stated. 17 C.J.S. Contracts § 330.

Item No. 12 was a necessary expense caused by the relocation of the front entry and is allowed in the sum of $45.60.

Item No. 13 is allowed in the sum of $72.08 for the reason that a change was made in the size and location of this window under the direction of the defendants, which necessitated the use of this extra material.

Items numbered 14, 15, 16, 17, and 18 are rejected. Item No. 18 is rejected for the reason that the contract for the installation of this window was between Dakota Plate & Glass Co. and the defendants direct.

Item No. 19 is denominated "Extra on Front for Dakota Plate, $561.06." There is a conflict in the evidence given by Mr. Shimek on this item. Mr. Shimek testified that this item was for extra framing lumber, although his answer was, "I presume so. The figures are there."

Exhibit 3, written by Mr. Shimek, specified that the window was to be furnished by the Fargo Plate & Glass Co. In Exhibit C, prepared by Mr. Shimek, as the foundation for his bid for the job, we find an item, "Carpenter and other labor, $4,000." It is reasonable to assume under these circumstances that whatever labor and material was required in preparing the wall for the installation of this window should be done by Mr. Shimek under the terms of this contract.

Going back to Shimek's testimony that this bill represents the cost of framing lumber for the window, we refer to p. 3, Exhibit R, which is the itemized bill of the Klein Lumber Co. Exhibit C upon which Exhibit 3 is based, contains an item, "Klein Lumber Co., material, $5,129.50." The actual bill of Klein Lumber Co. as shown by Exhibit R is $2,486.86. Exhibit R, on p. 3, under date of September 5th, gives a long list of material furnished, followed by the penciled words, "Window Front" totalling $226.21. On the top of p. 4 of said Exhibit R, are shown three other items totalling $9.21, followed by "Window." Nowhere in the evidence is there any indication that this bill of $561.06 was incurred for extra framing lumber for the basement or for the window, and it is apparent that this item must be rejected regardless of the category in which it is placed by plaintiff.

No objection to the 10% overhead charge by the plaintiff was made by the defendants. An agreement of that nature is valid and hence the Court allows 10% on items numbered 1, 2, 3, 6, 8, 12, and 13, in the sum of $71.04. On items numbered 6 and 12 the Court allows Sales Tax of $1.78.

Including the allowance for sales tax and 10% overhead expense, a total allowance to plaintiff for extras is made in the sum of $783.22.

We now consider the defendants' counterclaim. Defendants strenuously urge that since the contract provides "all work must at all times be of the best workmanship and at all times must be satisfactory to the owners," and since defendants testified that the work was not satisfactory, plaintiff's right of recovery is defeated. But that is not the rule. Such a provision means that the work must be such as would suit a reasonable man and the objections cannot be capricious or unreasonable. It is not necessary that the work be performed to the satisfaction of the owners if it is done according to the plans and specifications. Such a provision is ordinarily construed to mean as requiring the performance of the work by the builder in such a substantial manner as ought reasonably to satisfy the owner, and the owner or his agent cannot capriciously reject the work; his dissatisfaction must be in good faith and for good cause shown, but if for good cause he may in good faith refuse to accept the work. 9 C.J., Building and Construction Contracts, Sec. 80. 17 C.J.S. Contracts § 327.

Counsel for defendants also urge that since the contract provides "that in case there are changes, the owner and contractor shall put the change or the extra in writing," and since there was no such writing, plaintiff cannot recover for any extra work he did. On this point we refer to Sec. 9–0906 NDRC 1943, which in part reads: "A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise."

Several changes in this operation were made at the request of the defendants. The contract does not mention the width of the building. The original plans provided for a beer room on the first floor. The plans did not include a basement. Neither did

they include a 4-ft. awning on the full front of the building. Neither is an aisle in the bowling room mentioned. One door as originally planned was omitted. The main entrance was placed several feet further to the south than as shown by the plans. No canopy was in the contract. These instances indicate that the contract was partly written and partly oral.

The contract, Exhibit 3, is somewhat ambiguous, and is incomplete and indefinite in some respects, and the numerous changes made during the work of construction were the result of those facts. So far as it is ambiguous it must be construed most strongly against plaintiff who drew it. Sec. 9–0719 NDRC 1943. This court has kept in mind the rules laid down by Ch. 9–07 NDRC 1943 and has construed the contract liberally as the parties must be held to have intended.

The contract provides that there shall be one inch of gravel placed on the roof. The testimony is undisputed that only one-quarter inch of gravel was placed on the roof. Defendants claim a right of recovery on that point. The undisputed testimony of the expert witnesses is that the amount of gravel placed on the roof was sufficient and that any more was unnecessary. This cost was included in Exhibit C, the estimate upon which the cost of this building was figured. The contract does not say that a reasonable amount of gravel should be furnished, but it specifies "one inch." It is reasonable to allow the defendants a deduction on that item in the amount of $132.50 which, according to the evidence, is the cost of the omitted gravel and the labor of putting it on.

Claim for damages is asserted by defendants because "the concrete floor was left rough, and the tile thereon has cracked and started to break." We do not find that this aisle was mentioned in the original contract. It is another change made by the defendants. Exhibit 3 required the concrete floors to be "rodded level." The evidence shows that when this matter was brought to the attention of the plaintiff he agreed to remedy the defect complained of. However, a very short time later when he looked at this aisle the tiling had already been placed upon it. The evidence shows that Mr. Zahn had the tiling placed on this floor without consulting Mr. Shimek or affording him the opportunity of repairing it before the tile was laid. The expert witnesses produced by defendants testified that to take up the tile, make the necessary repairs, and replace new tile, would cost in the neighborhood of $900. Mr. Shimek cannot reasonably be held to any such liability. We find from the evidence that the reasonable cost of repairing said floor is $450, which is the amount allowed on that item.

As to the leaks from the roof, the defendants have failed to prove by a fair preponderance of the evidence that such leaks were caused by any negligence on the part of plaintiff. The evidence shows that after the roof was completed, employees of Mr. Zahn installed vents through the roof to accommodate the removal of air and odors from the kitchen and for other purposes. The leaks may have resulted from such work and we cannot assume it was due to plaintiff's negligence.

A major complaint of defendants is that the waterproofing done by plaintiff on the sides of the building was wholly insufficient, and this fact is well established by the evidence. It is well established by the evidence that during a heavy rainstorm water ran through numerous cracks in the walls of this building and caused defendants considerable inconvenience and damage. The original contract provided that "the contractor shall spray two coats of waterproofing ingredients over the outside wall to waterproof the walls from the outside." Mr. Shimek was asked whether he knew that two coats of waterproofing wouldn't waterproof the building and Mr. Shimek stated, "I knew it didn't. Two coats wouldn't waterproof it." There is no evi-

dence in the record offered by either party showing that further treatment was necessary to make these walls waterproof except that Mr. Ritterbush testified that his estimate of the cost of completing the waterproofing of the walls would be $506.72. This testimony stands undisputed and the Court allows defendants that amount.

Since the contract provided that all outside walls should be painted, the surface of the foundation where exposed to the air must also be included. It was not painted by Mr. Shimek and the Court allows $150 on that item.

Defendants complained of various other small leaks but the court is satisfied that such claims would be disposed of by properly waterproofing the outside walls. The evidence on those and other claims of defendants was indefinite and conflicting. On the whole record we find defendants entitled to recover under their counterclaim the following amounts:

| | |
|---|---:|
| The roof gravel items | $ 132.50 |
| Floors rough and uneven | 450.00 |
| Waterproofing | 506.72 |
| Painting foundation walls | 150.00 |
| Repairing cracks in walls | 250.00 |
| Damages caused by water | 150.00 |
| Total | $1,639.22 |

| | |
|---|---:|
| The Court finds there was due plaintiff on September 26, 1956 | $7,118.00 |
| Amount allowed under plaintiff's claim for extras | 783.22 |
| Total due plaintiff | 7,901.22 |
| Deducting amount due defendants under their counterclaim | 1,639.22 |
| Balance due plaintiff | $6,262.00 |

———◆———

The judgment of the trial court will be modified accordingly, and as modified is affirmed.

SATHRE, C. J., and MORRIS, BURKE, and TEIGEN, JJ.

STRUTZ, J., disqualified, did not participate, Honorable H. E. RITTGERS, Judge of the Fourth Judicial District, sitting in his stead.