635 P.2d 867

Jerry MYERS and L. Darlene Myers, husband and wife, dba Powerlite Electric Co., Plaintiffs/Appellees,

v.

WESTERN REALTY & CONSTRUCTION, INC., an Arizona corporation; and United States Fidelity & Guaranty Corporation, a corporation, Defendants/Appellants.

No. 2 CA–CIV 3862.

Court of Appeals of Arizona, Division 2.

June 25, 1981.

Rehearing Denied Sept. 2, 1981.

Review Denied Sept. 29, 1981.

Alley, Sullivan & Gray by Charles F. Sullivan, Tucson, for plaintiffs/appellees.

Higgins & Sinema, P.C. by Dan A. Sinema, Tucson, for defendants/appellants.

## OPINION

HOWARD, Judge.

This appeal arises from a judgment entered in favor of appellees in the sum of $7,954.90, permitting a setoff of $1,085.39 in favor of appellants.

We will view the facts in the light most favorable to upholding the judgment. Appellees, doing business as Powerlite Electric Company (Powerlite), a licensed electrical subcontractor, and appellant, Western Realty & Construction, Inc. (Western), a licensed general contractor, entered into various written agreements wherein Powerlite was to perform electrical work on certain residences and duplexes for Western. The parties had a history of prior contractual dealings in the construction field, which included both oral and written agreements. The contracts used in this case were pre-printed forms which omitted certain provisions including the time of payment and progress payments, general provisions and descriptions of labor and materials to be furnished by Powerlite.

The parties developed a mode of payment whereby 70 per cent of the amount bid would be payable to Powerlite upon completion of rough-in electrical work and the balance would be due upon completion of the finished electrical work. During the course of construction, Powerlite submitted several invoices for extra labor and materials which exceeded the contract price for the two residences. These bills were paid by Western, although the contract required that payment for extras would not be honored without a written order signed by it.

In December 1979 the final bills for electrical work were submitted at which time Powerlite was told that payment would not be forthcoming. Powerlite pulled off the

jobs prior to completion because of non-payment and filed suit for the reasonable value of labor and materials furnished. One month after this suit was filed, Powerlite received notice of Western's complaint and dissatisfaction, which had been filed with the Registrar of Contractors Office.

Powerlite's complaint requested recovery for the reasonable value of labor and materials furnished under various construction contracts with Western. In its brief, however, Western treats the claim as one for breach of contract rather than one in quantum meruit; it asserts that error occurred because Powerlite failed to establish a prima facie case for breach of contract. The record reflects that Powerlite's cause of action was treated throughout the case as a claim in quantum meruit. Moreover, the trial court's findings of fact are phrased in terms which evince that recovery was based on a theory of quantum meruit.

■ The first issue we must address is whether a suit in quantum meruit was proper in view of the fact that a contract exists between the parties. An action in quantum meruit is proper when a defendant breaches the contract by failing to make payments as agreed upon by the parties. In such a case, the plaintiff is entitled to rescind the contract and sue in quantum meruit for the reasonable value of services rendered, without the necessity of first fully performing the written contract. *Schwartz v. Schwerin*, 85 Ariz. 242, 336 P.2d 144 (1959).

In the instant case, Powerlite's claim for the reasonable value of services and materials was based on Western's refusal to make payments. The contract specifically provides that Western, as contractor, "may withhold payment to the Subcontractor on account of (1) the failure of the Subcontractor to comply fully with any requirements of this contract . . ." The contract requires the subcontractor to perform all of the labor, supervision and materials in exact accordance with the specifications, plans, drawings and details of the job. Furthermore, it states that:

"The Contractor shall decide all questions which may arise as to the performance, quantity, quality, acceptability, fitness and rate of the work or materials furnished under this contract. . . . All work and materials will be subject to supervision and approval by the Contractor. The Contractor's interpretations of and decision as to the meaning of the plans, drawings, details and specifications or any part thereof shall be final."

■ A provision in a building contract that the work shall be satisfactory to the owner is valid and enforceable, and honest dissatisfaction with the work, when proved, will prevent recovery on the contract. See *Pormann v. Walsh*, 97 Wis. 356, 72 N.W. 881 (1897). Cf., *Gillespie Land & Irrigation Co. v. Hamilton*, 43 Ariz. 102, 29 P.2d 158 (1934) (contract provisions requiring engineer approval of construction work are valid and binding unless engineer acted arbitrarily or capriciously). Generally, this type of provision is construed to mean that the work must be done in such a manner as would be satisfactory to the reasonable person. *Thomas Haverty Co. v. Jones*, 185 Cal. 285, 197 Pac. 105 (1921); *Shimek v. Vogel*, 105 N.W.2d 677 (N.D.1960); *Haymore v. Levinson*, 8 Utah 2d 66, 328 P.2d 307 (1958). See also, Annot., 44 A.L.R.2d 1114. The question of whether the owner, as a reasonable person, should have been satisfied with the work is a question of fact. See *Haymore v. Levinson*, supra.

■ One of the most disputed issues in this case was whether Powerlite's work complied with the terms of the agreement. Western argues that it never accepted the work as satisfactory and, therefore, payment was not due under the terms of the contract. A great deal of conflicting testimony on the issues of whether the work was, in fact, approved and whether it was done in a workmanlike manner was received into evidence. The trial court made the following findings of fact:

"6. Plaintiffs furnished to defendant Western Realty & Construction, Inc., various labor and materials utilized in the direct performance of construction con-

tracts from August 15, 1978 through February, 1979, all during the effective periods of both bonds and within the purview of such bonds as issued pursuant to A.R.S. § 32–1101 et seq.

7. Defendant Western Realty & Construction, Inc. is indebted to Plaintiffs, for labor and material furnished in the direct performance of construction contracts, in the sum of $7,954.90."

Although the trial court did not make any findings regarding the reasonableness of Western's dissatisfaction with Powerlite's work, a finding that dissatisfaction was not reasonable is supported by the evidence and we infer from the court's findings that such a finding was made by the trial court. See *Wippman v. Rowe*, 24 Ariz. App. 522, 540 P.2d 141 (1975). The trial court did not err in awarding Powerlite judgment.

Western also claims that error was committed in the amount it was awarded as a setoff. It argues that it is entitled to set off all sums paid to ARC Electric, the company it hired to complete and repair the electrical work started by Powerlite. The total amount paid to ARC Electric was $11,-116.67 but the trial court awarded a setoff of $1,085.39.

The transcript is replete with conflicting testimony concerning the amounts paid to ARC Electric by Western, for labor and material furnished to repair or complete Powerlite's work. Findings of fact shall not be set aside unless clearly erroneous and when there is conflicting evidence, this court will not substitute its judgment for that of the trial court. *Lawrence v. Valley National Bank*, 12 Ariz.App. 51, 467 P.2d 763 (1970). We find substantial evidence to support the trial court's awarding the setoff.

Affirmed.

HATHAWAY, C. J., and BIRDSALL, J., concur.