**TEXACO, INC., Appellee,**

v.

**MERCURY EXPLORATION COMPANY, Appellant.**

No. 92–2574.

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1993.

Decided May 27, 1993.

Rehearing Denied July 13, 1993.

---

Charles T. Edin, Bismarck, ND, argued (Thomas O. Smith, on the brief), for appellant.

John D. Sullivan, Denver, CO, argued (William P. Pearce and Lawrence Bender, Bismarck, ND, on the brief), for appellee.

Before MAGILL, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

HEANEY, Senior Circuit Judge.

Texaco Inc. and Mercury Exploration Company entered into an agreement to drill three oil wells in Mountrail County, North Dakota. Texaco sued Mercury for breach of contract in the United States District Court for North Dakota and sought liquidated damages of $150,000. Mercury alleged oral modification and estoppel. The district court granted Texaco's motion for summary judgment, and Mercury appealed. We affirm.

I

The underlying facts of this dispute are relatively straightforward. Texaco approached Mercury about drilling oil wells on three of its leased properties. Texaco would provide the land and the seismic data, Mercury would drill the initial gas and oil test wells, and, to simplify, the two would share in any proceeds. Mercury's relevant obligation was set forth in paragraph I.A. of the agreement:

On or before December 31, 1990, MERCURY shall drill to Objective Depth a Required Initial Test Well on each Prospect listed below:

1. Cygnus Prospect
2. Woolly Bear Prospect
3. Gee Prospect

All drilling, testing, completing, equipping and/or plugging operations for all three (3) Required Initial Test Wells shall be completely finished on or before December 31, 1990.

Appellant's App. at 65. The liquidated damages clause was set forth in paragraph III:

In the absence of Force Majeure, if MERCURY fails to drill to Objective Depth and test, complete, equip and/or plug any or all of the Required Initial Test Wells as provided herein, MERCURY shall make the following payments to TEXACO.

A. Failure to drill one (1) Required Initial Test Well on the Cygnus Prospect as set forth herein: Fifty Thousand Dollars ($50,000.00) to be paid within thirty (30) days after December 31, 1990.

B. Failure to drill one (1) Required Initial Test Well on the Woolly Bear Prospect as set forth herein: Fifty Thousand Dollars ($50,000.00) to be paid within thirty (30) days after December 31, 1990.

C. Failure to drill one (1) Required Initial Test Well on the Gee Prospect as set forth herein: Fifty Thousand Dollars ($50,000.00) to be paid within thirty (30) days after December 31, 1990.

Said sums shall be paid to TEXACO not as a penalty, but as liquidated damages due to the difficulty in attempting to determine actual damages, and this Section III shall be TEXACO'S sole remedy in the event of MERCURY'S failure to drill the wells described in this provision.

*Id.* at 68. The term of the agreement was three years, and any modification was to be in writing and signed by both parties. *Id.* at 78. It was entered into on March 28, 1990.

By the fall of 1990 Mercury had been unable to find partners to help it finance the drilling, and had consequently not begun drilling any of the three wells. It therefore sought some accommodation by Texaco, and according to Mercury, it was orally agreed that the December 31 deadline would be extended by two months. No writing was made because, according to Mercury, Texaco indicated that it was not needed. Texaco's evidence is that an extension was discussed, but that Mercury was told it would have to drill one of the wells before an extension would be seriously considered.

Mercury obtained the necessary partners on January 7, 1991, the same date on which, according to Mercury, Texaco indicated that no extension would be honored. Mercury alleges this was due to Texaco's intervening discovery that the Cygnus Prospect was much more valuable than previously believed. Mercury had not drilled any of the three wells. When Mercury failed to pay Texaco the $150,000 in liquidated damages for which the agreement had provided, Texaco brought this action.

## II

■ We review the district court's grant of summary judgment *de novo,* viewing the facts in the light most favorable to Mercury, the nonmoving party. *Smith v. Gould, Inc.,* 918 F.2d 1361, 1363 (8th Cir.1990). Given the most reasonable construction of the contract, the only relevant facts are Mercury's failure to drill any of the three wells, and its failure to pay the liquidated damages.

This action is grounded on diversity jurisdiction, and there is no dispute that North Dakota law controls. *See id.* at 1363 & n. 3. The contract language is clear and unambiguous: the wells were to be drilled on or before December 31, 1990; any modifications to the contract were to be in writing; Mercury would pay $50,000 to Texaco for each well not drilled as required; and the contract was to run for three years. Mercury raises a number of arguments, but we find each without merit.

### A

■ Mercury first argues that Texaco waived the writing requirement when it orally agreed to the alleged extension. Assuming that Texaco did orally agree that a writing was not necessary, the question remains whether such waiver, and ultimately the alleged extension, is enforceable. Though the agreement requires that all modifications be made in writing, North Dakota law provides that written contracts may be altered either "by a contract in writing or by an executed oral agreement and not otherwise." N.D.Cent.Code § 9–09–06 (1987); *see Shimek v. Vogel,* 105 N.W.2d 677, 683 (N.D. 1960). An executed oral agreement occurs "within the meaning of this section whenever the party performing has incurred a detriment which he was not obligated by the original contract to incur." N.D.Cent.Code § 9–09–06 (1987).

Mercury argues that the detriment it incurred was "depriv[ation] of its rights to make an informed decision as to the liquidated damages," adding that it "gave up its legal rights to perform in any manner before December 31, 1990 based upon Texaco's two month extension to the Agreement." Appellant's Brief at 33. Mercury relies on *Keen v. Larson,* 132 N.W.2d 350, 357 (N.D.1964), in which the North Dakota Supreme Court held that "[a] legal detriment may be sustained by a promisee by the surrender of a legal right, whether such right has substantial value or not." *Keen* involved an agreement based on forbearance to bring legal action, the success of which was doubtful. Nonetheless, the court held that such forbearance constituted sufficient consideration. Mercury's argument fails in that it gave up no legal rights. Even if Texaco did agree to the extension, Mercury remained in a position to perform prior to December 31 and was simply given the additional option of performing in the first two months of the following year. Mercury argues that the benefit it received was in fact a detriment. Were this view adopted, the North Dakota statute would be rendered meaningless. Rather, we rely on *Cargill,*

*Inc. v. Kavanaugh*, 228 N.W.2d 133, 138 (N.D.1975), in which Cargill argued that an oral agreement to change a delivery date had been made. The North Dakota Supreme Court found that if such an agreement had been made, it could not be considered executed within the meaning of section 9–09–06 because Cargill had "in no way changed its relative position with Kavanaugh as a result of the alleged oral agreement." *Id.* Similarly, Mercury in no way changed its relative position with Texaco.[1]

### B

 Mercury's next argument, that Texaco is equitably estopped from asserting the December 31 deadline, fails because it has shown insufficient reliance on Texaco's alleged representation. Six elements must be satisfied for equitable estoppel to apply in North Dakota, three of which concern the party claiming the estoppel:

> "(1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon, of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice."

*Jamestown Terminal Elevator, Inc. v. Hieb*, 246 N.W.2d 736, 741 (N.D.1976) (quoting Robert A. Brazener, Annotation, *Promissory Estoppel as Basis for Avoidance of Statute of Frauds*, 56 A.L.R.3d 1037, 1041–42 (1974)). The district court found, and Mercury appears to acknowledge, that its greatest difficulty is with the second element, reliance. Relying on *Jamestown*, Mercury argues on appeal that its having suffered "an unjust or unconscionable injury or loss" suffices. *Id.* Had it suffered such an injury, it might well suffice—putting aside for the moment the

elements that apply to Texaco—but Mercury presents no evidence of such an injury.

### C

 Mercury finally argues that the three-year term of the contract requires that Mercury be allowed to drill the wells within that period, subject to its payment of the liquidated damages. Texaco responds that the three-year term—a provision of the contract that is quite separate from the December 31, 1990, deadline in the liquidated damages provision—is the term for which Mercury's interest in the wells' proceeds shall continue. That Mercury has any interest in the wells' proceeds depends on its satisfying the condition precedent; namely, that it drill the wells.

We agree with the district court that Texaco's reading of the contract is the only reasonable one. No reasonable jury could read the contract as Mercury does, so the district court was correct to grant summary judgment on this issue as well.

### III

Mercury was obliged to drill the three wells or pay $150,000 in liquidated damages. Mercury has not drilled any of the three wells, and any alleged oral modification to the contract, if true, would nonetheless be unenforceable under North Dakota law. The district court's legal analysis was correct on all counts, and its grant of summary judgment to Texaco is therefore affirmed.

---

1. Mercury argues in its reply brief that the detriment it suffered was its willingness to drill the wells within the first two months of 1991 under the alleged extension rather than take advantage of its right to pay the liquidated damages and drill anytime within the three-year term of the contract. Given our holding in part II.C. *infra* that no reasonable jury could read the contract as Mercury purports to, Mercury's relinquishment of this nonexistent right fails even the "doubtful" standard applied by the North Dakota Supreme Court to the alleged right in *Keen*. Mercury gave up no legal right, suffering no detriment, and there was consequently no executed oral agreement.