## J. J. QUINLIVAN, Appellant, v. DENNSTEDT LAND COMPANY, Incorporated, Respondent.

(168 N. W. 51.)

**Written contract — altered — cannot be — by subsequent oral contract — unless executed — new parol agreement — parties may make — new obligations — separate from and at variance with old written contract — new agreement binding, unless required to be written.**

While a written contract cannot be altered by a subsequent parol agreement, unless such agreement is executed, the contracting parties may nevertheless enter into a new parol agreement creating obligations separate from, and at. variance with, the old ones, and such new agreement will be binding unless the agreement is one required by the statute to be in writing.

Opinion filed April 2, 1918. Rehearing denied May 28, 1918.

Appeal from the District Court of Barnes County, *Coffey*, J.
From an order denying a new trial, plaintiff appeals.
Affirmed.
*S. E. Ellsworth,* for appellant.

After a broker has found a customer and negotiations are commenced, neither the principal nor the customer can break them off and defeat the broker's right to commissions by concluding the transaction without his aid. 19 Cyc. 262; Scott v. Clarke (S. D.) 54 N. W. 540; Nicholas v. Jones (Neb.) 37 N. W. 679; Donohue v. Padden (Wis.) 66 N. W. 804; McKenzie v. Lego (Wis.) 74 N. W. 249; Potvin v.

Curran (Neb.) 14 N. W. 400; O'Toole v. Tucker (N. Y.) 38 N. Y. S. 969; David-Fischer Co. v. Hall (Mich.) 148 N. W. 713.

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument." Comp. Laws 1913, § 5889.

"A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise." Comp. Laws. 1913, § 5937.

"An executed contract is one the object of which is fully performed. All others are executory." Comp. Laws 1913, § 5921.

As applying to the above-named statutes: Annis v. Burnham, 15 N. D. 577, 208 N. W. 549; Plano Mfg. Co. v. Root, 3 N. D. 165, 54 N. W. 924; Hutchinson v. Cleary, 3 N. D. 270, 55 N. W. 729; Fletcher v. Nelson, 6 N. D. 94, 69 N. W. 53; Cughan v. Larson, 13 N. D. 373, 100 N. W. 1088; Reeves & Co. v. Bruening, 13 N. D. 157, 100 N. W. 241.

All the authorities agree that where, in the absence of fraud or mistake, the parties have deliberately put their contract into a writing which is complete in itself, and couched it in such language as imports. a complete legal obligation, it is conclusively presumed that they have introduced into the instrument all material terms and circumstances relating thereto. Putnam v. Prouty, 24 N. D. 517, 140 N. W. 93; McCulloch v. Bauer, 24 N. D. 109, 139 N. W. 318; Harney v. Wirtz, 30 N. D. 292, 152 N. W. 803; J. I. Case Threshing Machine Co. v. Loomis, 31 N. D. 27, 153 N. W. 479; Wynn v. Coonen, 31 N. D. 160, 153 N. W. 988; Reitsch v. McCarty, 35 N. D. 555, 160 N. W. 694.

To supersede a written contract, a subsequent oral contract must be fully performed in all its terms. Civ. Code, § 1287; Share v. Coats. (S. D.) 137 N. W. 402.

"An executed contract has the qualities of a chose in possession, while an executory contract is nothing but a chose in action,—the mere right to something arising from a contract, express or implied, which cannot be enforced without resort to legal process." 11 Am. & Eng. Enc.Law, 582; 3 Am. & Eng. Enc. Law, p. 824.

"An executory contract is one in which a party binds himself to do

or not to do a particular thing. A contract executed is one in which the object of the contract is performed." Fletcher v. Peck, 6 Cranch, 87, 3 L. ed. 162; Mfg. Co. v. Galloway, 5 S. D. 205, 58 N. W. 565; Lewis v. Railroad Co. 5 S. D. 148, 58 N. W. 580; Strunk v. Smith, 8 S. D. 407, 66 N. W. 926; Bank v. Kellog, 4 S. D. 312, 66 N. W. 1071; Washabaugh v. Hall, 4 S. D. 168, 56 N. W. 82.

"The alleged oral agreement in this case to reduce the rent so many dollars per year was void and inoperative in so far as it remained unexecuted. The lessors had the right to repudiate it at any time and demand the full amount of rent provided for by the lease." McKenzie v. Harrison, 120 N. Y. 260, 24 N. E. 458.

An executory contract providing for payment is not to be deemed such until payment has actually been made. Share v. Coats (S. D.) 187 N. W. 402.

"Where a written contract for the sale of land provides that no agent can change its terms, evidence of statements made by an agent that the forfeiture clause would not be enforced was inadmissible." Stevenson v. Joy (Cal.) 128 Pac. 751; Manganese Steel Co. v. Bank (S. D.) 134 N. W. 886; Reiff v. Coulter, 47 Wash. 678, 92 Pac. 436; Downing v. Coolidge, 46 Colo. 345, 104 Pac. 392; Bradley v. Harter, 156 Ind. 499, 60 N. E. 139; Grand Forks Lbr. Co. v. McClure Logging Co. 103 Minn. 471, 115 N. W. 406; Culy v. Upham, 135 Mich. 131, 106 Am. St. Rep. 388, 97 N. W. 405.

*Knauf & Knauf,* for respondent.

The right to contract includes the right to modify, change, or abrogate a pre-existing contract, and hence any contract, whether in writing or oral, not under seal, may be annulled or changed by a subsequent oral contract, and the last contract will bind the parties. Bishop v. Busse, 69 Ill. 403; Putnam Foundry & M. Co. v. Canfield, 56 Atl. 1033.

It is clearly competent to plead and prove a new and distinct agreement upon a new consideration, whether it be a substitute for the old or in addition to and beyond it. 1 Greenl. Ev. § 303; Bannan v. Aultman & Co. (Wis.) 49 N. W. 967; Seaman v. O'Hara, 29 Mich. 66, 67; Ch. Cont. ed of 1848; 2 Phill. Ev. 363; 4 Phill. Ev. 301 note; Bryan v. Hunt, 70 Am. Dec. 262; Bryan v. Hunt, 4 Sneed 543; Richardson v. Hooper, 13 Pick. 446, 98 N. W. 1044.

A new oral contract can be proved by-way of novation or an oral waiver agreed upon as to the terms of a written agreement or as to a cancelation thereof.   Guidery v. Green (Cal.) 30 Pac. 786; Goss v. Lord Nugent, 5 Barn. & Ad. 65; Cummings v. Arnold, 37 Am. Dec. 155, and cases cited; Boyce v. McCulloch, 39 Am. Dec. 38; Mc-Ninch v. Northwest Thresher Co. 100 Pac. 524; Smith-Wogan H. I. Co. v. Moon, 108 Pac. 1103; Jones v. Longerbeam, 119 N. W. 1000; Tilley v. Bartow, 62 So. 330; Smith v. Consumers Cotton Oil Co. 30 C. C. A. 103.

A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise.   Cal. Civ. Code, § 1698; Knarston v. Manhattan L. Ins. Co. 140 Cal. 57, 73 Pac. 740; Fairbanks, M. & Co. v. Nelson, 133 C. C. A. 215, 216.

A new contract, different from and at variance with the old one, and founded upon a valid consideration, is binding and may be enforced.   Tabin v. Kells, 93 N. E. 596; Bishop v. Busse, 69 Ill. 403–407; Wilson v. McClenny, 13 So. 873; Homire v. Stratton, 164 S. W. 67; Youngberg v. Lamberton, 97 N. W. 571; Platte Land Co. v. Hubbard, 56 Pac. 65; Credit Clearance Bureau v. Hochbann Constr. Co. 144 Pac. 315; Pearsall v. Henry, 153 Cal. 314, 95 Pac. 154, 144 Pac. 315.

Where defendant claims a new and distinct contract, based upon a valid consideration, and that it takes the place of the old one, and there is proof to sustain or support such claim, it becomes a question for the jury.   9 Cyc. 597; Monroe v. Perkins, 20 Am. Dec. 475; Blagborne v. Hunger, 59 N. W. 657; West Haven Water Co. v. Redfield, 18 Atl. 978.

Plaintiff was a mere sales agent.   Harney v. Wirz, 30 N. D. 292.

The fact that a written contract provides that it may not be modified except by an instrument in writing will not avail where a party directly waives or participates in or encourages the waiver or new contract, or induces one to change his position to his detriment; such a party will not be heard to say that no new writing was made and therefore the new agreement is void.   Blagborne v. Hunger, 59 N. W. 657; Westchester v. Earle, 33 Mich. 143; McFadden v. O'Donnell, 18 Cal. 164; Erskine v. Johnson, 36 N. W. 510; Osborne & Co. v. Stringham (S. D.) 57 N. W. 776; McLead v. Genius, 47 N. W. 473.

39 N. D.—39.

CHRISTIANSON, J.  The defendant is a corporation engaged in land business.  The plaintiff is one of its sales agents, and he brings the instant case to recover $5,395 and interest, which he claims is owing to him for procuring a certain purchaser for the defendant.

It appears that on May 1, 1915, the plaintiff and defendant entered into a written contract, under the terms of which the defendant appointed the plaintiff "as its district agent, with the privilege of selecting subagents, to cover the following described territory, to wit:  The counties of Jerauld, Sanborn, Miner, Minnehaha, Hutchinson, Turner, Lincoln, Kingsbury, Brookings, Meadle, and Spink, all in South Dakota, and elsewhere, *not conflicting with other agents,* and the counties of Butler, Seward, and Saunders, all in Nebraska, and elsewhere *not conflicting with other agents,* and such other territory that the second party contracts with subagents, and said contracts are accepted by the company."  And as compensation for services under the contract the land company agreed "to *pay second party fifty (50) per cent of the net profits realized on all sales of land to purchasers* from the territory assigned, or otherwise secured by the second party, or purchasers produced by subagents of said second party."  The contract also provided:  "That where a trade is made, the property traded for shall not be termed as cash, until same has been sold, at which time commissions are due, according to the above terms, unless otherwise agreed to in writing."

About June 12, 1915, while at work in Minnehaha county, South Dakota, the plaintiff was advised by one H. V. Harlan that his brother C. C. Harlan at Cedar Falls, Iowa, had a stock of goods, which he might exchange for North Dakota lands.  The plaintiff thereupon wrote a letter notifying the defendant of this fact, and suggested that it enter into negotiations with Harlan, with a view of making the proposed exchange.  The defendant had an agent, one J. E. Ray, at Cedar Falls, Iowa, and partly through correspondence, and partly through personal negotiations of the Dennstedt Brothers, but principally through the efforts of the agent Ray, the deal was finally consummated.  The deal was closed on October 2, 1915, and a written contract of exchange was entered into on that day at Cedar Falls, Iowa.  After Harlan had investigated the lands offered in exchange, he notified the agent Ray that he was willing to make the trade.  Ray thereupon

notified the defendant company, and A. L. Dennstedt, the president, and E. W. Dennstedt, the vice president, went to Cedar Falls to examine the goods. After they had made the examination and before the deal was closed, they decided to make some definite deal with their agents with respect to the commissions to be paid in connection with the deal. And it is undisputed that on October 2, 1915, before the deal was closed, E. W. Dennstedt had a long-distance telephone conversation with the plaintiff with respect to the commissions to be paid the plaintiff. There is a dispute in the testimony, however, with respect to what was said during the conversation. E. W. Dennstedt gives the following version thereof: "I said to him that we were at Cedar Falls for the purpose of inspecting the Harlan goods; that we found them not as good as we expected and in fact they were poor in quality and shopworn; and that before we could go on with the deal we would have to get the commission arranged. I told him that we could not come out on the deal and pay a very big commission; that we had figured it all over and found that we could not pay him over $500 in full for his commission, as Mr. Ray was entitled to $1 per acre on the land in question, as the deal was in his territory; and said Mr. Ray had put a lot of work in on the deal. Mr. Quinlivan said, 'You had better make it $1,000.' I said, 'No, we could not do it.' Then he said, 'Give me $750.' I said, 'No, we would rather not make the deal than to pay over $500.' Then he said, 'Well, all right, I will take that. Go ahead, make the deal.'"

Dennstedt's version of the conversation is corroborated by A. L. Dennstedt and J. E. Ray, who were present at Cedar Falls, Iowa, and heard the words spoken by Dennstedt. It is also corroborated by A. E. Dennstedt and Fred Marshall, who testified that they were present at Wimbledon, North Dakota, and heard the part of the conversation spoken by the plaintiff.

The plaintiff admits that such conversation was had. He also admits that E. W. Dennstedt asked him to accept $500 as his commission. He denies, however, that he agreed to accept such sum. Plaintiff gives the following version of the conversation: "He, E. W. Dennstedt, said after we got down here and looking this matter over, we found it was a pretty bum lot of stuff and said $500 is all we can pay on the deal. We have to pay Ray a dollar an acre or $480. Well,

I told him I could not consider any such a proposition as that at all. *Well, he says, it is $500 or nothing.* I hung up the receiver. It made me angry."

It is undisputed that a few hours after this telephone conversation was had the defendant company entered into a contract with Harlan, whereby it exchanged certain lands for the stock of merchandise. The defendant continued to operate the store in which the stock of merchandise was contained for a short period, and received $2,590.18 for goods sold in the usual course of business. The testimony, however, further shows that during this time the store was operated at a loss of $654.54. The defendant subsequently traded the remaining portion of the stock of goods to one Olson and received therefor equities in two tracts of land,—one situated in Mower county, Minnesota, and the other in Ransom county, North Dakota, and $5,928 cash to boot. For the purpose of the trade the equities in the lands were valued at $7,700.

The evidence clearly shows, however, that they had no such actual value. In fact the lands were encumbered for practically their entire value, and the valuation of $7,700 placed on the equities was a fictitious or inflated value placed thereon for the purposes of the trade. The defendant offered to sell these equities to the plaintiff for $1,000 and the evidence shows that this about represented their actual value.

It is undisputed that the defendant had a duly appointed agent at Cedar Falls, Iowa, and that plaintiff had knowledge of this agent at the time he notified defendant that C. C. Harlan might possibly be interested in some North Dakota lands. In fact plaintiff testified that he suggested to the defendant that it take the matter up with its agent at Cedar Falls, and have such agent enter into negotiations with Harlan. It is also undisputed that the defendant paid its Cedar Falls agent a commission of $1 per acre for the land disposed of, which was the full amount of his commission for the sale of the lands under the contract between him and the defendant. It is further undisputed that the defendant has paid the plaintiff $482.76 to apply on his commission in the Harlan deal.

In his complaint plaintiff alleges that he, acting under the written contract, placed the defendant in communication with C. C. Harlan, with the result that it exchanged certain lands for a stock of goods of

the value of $13,638; that it realized therefrom a profit of $11,525, and that under the written contract plaintiff is entitled to receive $5,760. The defendant in its answer admits the execution of the contract, and alleges that the territory in and about Cedar Falls, Iowa, was not allotted to the plaintiff, but was at all times within the territory allotted to one J. E. Ray, a regularly and duly appointed sales-agent of the defendant for such territory. It denies that the goods received were of the value of $13,628, or worth any sum greater than $3,600. It further alleges that the profit realized by defendant on the deal did not exceed $1,200. The answer further alleges that the sale or exchange was made in territory outside of that allotted to and accepted by the plaintiff; that on examination of the goods it was found that they were of less value than expected, and that upon discovery of the fact the defendant, before making any deal, entered into an agreement with plaintiff, whereby plaintiff agreed to accept for all services performed by him in connection with the deal the sum of $500, and that the defendant has paid to said plaintiff all of such sum, except $17.82, which balance it offers to pay.

The case was tried to jury, which returned a verdict in favor of the plaintiff for the sum of $17.54. The plaintiff moved for a new trial. The motion was denied and plaintiff has appealed from the order denying such motion.

Appellant contends that the court erred in permitting defendant to introduce any evidence relating to the agreement made over long-distance telephone. He asserts that this testimony tended to vary and alter the terms of a written contract, and hence was inadmissible under the following statutory provisions: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all of the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." Comp. Laws 1913, § 5889. "A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise." Comp. Laws 1913, § 5938.

We are unable to agree with appellant's contention. In the first place it seems quite clear that the deal with Harlan was not one within the terms of the written contract between the plaintiff and the defendant. Under this contract plaintiff was allotted certain territory in

South Dakota and Nebraska "and elsewhere not conflicting with other agents." It is conceded that Harlan resided outside of the territory allotted to the plaintiff, and that the territory in which he resided had been allotted to one J. E. Ray, a regularly appointed sales agent of the defendant. This fact was known to the plaintiff at the time he notified defendant that it might be able to make a deal with Harlan. It is also undisputed that all the actual negotiations leading up to the deal between the defendant and Harlan were carried on through Ray, and not through the plaintiff.

Manifestly the plaintiff could not have solicited and made the deal with Harlan without "conflicting" with Ray. Ray actually negotiated the deal and received the full amount of the commission to which he was entitled under his contract with defendant. The mere fact that the plaintiff suggested to his principal, the defendant, that it might make a deal with a person residing in territory not allotted to plaintiff, but allotted to another agent, certainly would not of itself imply that the defendant by acting on such suggestion would become obligated to pay a commission to the plaintiff for making the suggestion.

But even though Harlan be deemed a purchaser whom plaintiff might have produced under the terms of the written contract, there was nothing to prevent the parties from making a new oral contract with respect to the proposed Harlan deal. For it is well settled that parties who have undertaken contractual obligations by an agreement in writing may nevertheless enter into a new parol agreement creating obligations separate from the old ones and at variance with them, and such new agreement will be binding, unless the contract is one required by the statute to be in writing. 9 Cyc. 597, et seq. This principle has been recognized and enforced by this court. See Colean Mfg. Co. v. Blanchett, 16 N. D. 341, 345, 113 N. W. 614; Westby v. J. I. Case Threshing Mach. Co. 21 N. D. 575, 132 N. W. 137. The contract between plaintiff and defendant was not required to be in writing. It might rest wholly in parol. 20 Cyc. 234.

Plaintiff merely introduced to the defendant, rather suggested to it the name of, a possible prospective purchaser. Manifestly plaintiff was not entitled to any commission under his written contract, unless and until a deal was made. A deal could only be made when

the parties agreed upon the terms of the trade. If they failed to agree plaintiff would receive nothing.

It is undisputed that after defendants' officers had examined the stock of goods, they notified plaintiff that the stock was unsatisfactory, and that they could not, and would not, make a deal with Harlan if they were required to pay plaintiff the commission prescribed by the written contract. The defendant in effect rejected the proposals made by Harlan as a purchaser produced by the plaintiff under the written contract, and notified plaintiff of such rejection. If the deal had terminated there plaintiff would clearly have been entitled to no compensation whatever. The defendant, however, at the same time proposed to plaintiff another agreement with respect to the Harlan deal. Plaintiff admits that defendants' officers informed him over the telephone that it could not make a deal with Harlan, and would not deal with him, unless the plaintiff entered into an agreement to accept a commission of $500. And while there was a square conflict as to whether the plaintiff accepted the new proposition, the preponderance of the evidence and the verdict of the jury is to the effect that he did.

In the contract of exchange between the defendant and Harlan, the stock of goods was listed at $13,628. The evidence showed that this was the original cost price, and that some of the goods were many years old. Defendants offered evidence tending to show that the actual value was considerably less. Harlan testified that the actual value of the stock did not exceed 50 per cent of such invoice value.

The defendant also offered evidence tending to show that certain equities in lands received by it in exchange for the Harlan stock were worth less than the price at which they were listed in the exchange agreement. Plaintiff asserts that the admission of this evidence was error. This evidence had bearing only on the question of the net profits derived by the defendant from the Harlan stock. It was material only in determining the amount of commission plaintiff would have been entitled to receive under the written contract. Inasmuch as the jury found defendant's version of the oral contract to be the correct one, and that plaintiff was entitled to recover only the commission fixed in such oral contract, these assignments of error are rendered immaterial.

We are of the opinion, however, that the evidence was admissible under the theory on which plaintiff sought to recover. Under the

written contract he was entitled to receive 50 per cent of the net profits realized from sales to purchasers secured by him, and property taken in trade was "not to be termed as cash" until it had been sold. It seems too clear for argument that, if these provisions were to be applied in determining the amount of plaintiff's commission on the Harlan deal, the defendant would be entitled to show the actual net profits received by it, or rather the amount it actually received in cash or its equivalent for the Harlan stock. Plaintiff's counsel suggests that the defendant might have sold the stock for a mere pittance or given the goods away, and in this manner defeated plaintiff's claim to a commission. The situation suggested by counsel does not exist in this case. Doubtless the defendant would have been required to act in good faith. There is not even an intimation in this case that it did not act with perfect fairness, and in good faith sought to realize as much as possible out of the Harlan stock.

The record contains no error prejudicial to the plaintiff. He received not only a fair trial, but had the benefit of rulings and instructions more favorable than the evidence and the law warranted.

The order denying a new trial is affirmed.

BIRDZELL, J. (concurring). I concur in the foregoing opinion and in the reasons assigned for the conclusion, but I am also of the opinion that the verbal commission contract, even considered as an alteration of the written agreement, was so far executed as to be binding upon the parties, and was not such an alteration as is prohibited by § 5938 of the Compiled Laws of 1913. This statute merely expresses the equitable doctrine relative to the alteration of sealed instruments which had, in reality, become a part of the common law by judicial legislation without the aid of such statutes. See McCreery v. Day, 119 N. Y. 1, 6 L.R.A. 503, 16 Am. St. Rep. 793, 23 N. E. 198; Leake, Contr. pp. 584, 585, 602. Other sections of the Civil Code have given to simple written contracts the force of the sealed instrument at the common law. Comp. Laws 1913, §§ 5833, 5881, 5894, and the section in question, in my opinion, only extend the settled doctrine relative to alteration.

The statute was not designed to permit one party to a written agreement to work a fraud upon the other by inducing him to assent ver-

bally to alterations, and then, after the full performance by the one-adversely affected by the alteration, to enforce the contract according to the original written provisions. An oral agreement which may alter a written contract is "executed," within the meaning of § 5938, whenever the party performing has incurred a detriment which he was not obliged by the original contract to incur, there being sufficient performance to render the enforcement of the original agreement inequitable. Stockton Combined Harvester & Agri. Works v. Glens Falls. Ins. Co. 121 Cal. 167–175, 53 Pac. 565. See Anderson v. Johnston, 120 Cal. 657, 53 Pac. 264; Mackenzie v. Hodgkin, 126 Cal. 591–598, 77 Am. St. Rep. 209, 59 Pac. 36.

A clear illustration of the proper application of the statute referred to is afforded by the case of Erenberg v. Peters, 66 Cal. 114, 4 Pac. 1091. The plaintiff and defendant in that case were parties to a five-year lease, and an action was brought by the lessor to recover the stipulated rental. During the term, however, the building was burned, and the parties entered into an oral agreement whereby the plaintiff agreed to erect another building, and defendant to pay an increased rental of $10 per month for the unexpired portion of the term. The plaintiff neglected to erect the building, but it was held, in accordance with well-settled law, that the defendant was liable for the rent under the lease, and that the oral agreement, not having been executed, did not alter the terms of the lease.

If the proposition for which the appellant in this case contends is correct, there would have been nothing to prevent the defendant from enjoying the full benefits of the new building (had it been erected) for the remainder of the period without the payment of any additional rental. In my opinion, the statute was not designed to legalize this. kind of fraud, much less was it intended to compel its sanction. Whenever the oral agreement has been fully executed by both parties, the obligation of the original written agreement is discharged, or when the party adversely affected by the oral alteration has done that which he was not obligated by the original written agreement to do, and has so far executed the oral contract that the enforcement of the original written agreement would not only deprive him of the benefit contemplated by the new agreement, but also subject him to substantial loss,

the oral agreement has been so far "executed" as to supersede the original written contract.

The case of Share v. Coats, 29 S. D. 603, 137 N. W. 402, relied upon by appellant's counsel, does not, in my opinion, contradict the principle above stated. In that case, the agent claimed that the verbal contract gave him a right to recover a higher commission than that provided for in the written agency agreement. It was not shown wherein the agent, in finding a purchaser, had done any more than he was required to do in the faithful performance of his obligation as an agent under the written contract. The written agency contract having bound the plaintiff to do everything that was done in effecting the sale upon which the added commission was claimed, he cannot be said to have incurred any detriment, nor to have altered his position to his prejudice in reliance upon the verbal agreement. See Gaar, S. Co. v. Green, 6 N. D. 48, 68 N. W. 318. Hence, the payment of an added commission to him would have been a mere matter of favor or good fortune; whereas, in the instant case, the defendant, in reliance upon the promise of the plaintiff, has been led to do that which it was in no manner bound to do, and which, according to the testimony that was believed by the jury, it would not have done except for the promise of the defendant.

Robinson, J. (concurring). The plaintiff sues on a written contract to recover commissions on a trade of certain lands in Stutsman county for a stock of goods and merchandise in Iowa. Though the trade, was made by defendant itself, the plaintiff claims that it was brought about by his agency and mediation.

However, it appears that immediately prior to the trade the defendant called up the plaintiff at Wimbledon on the long-distance phone, and stated that unless the plaintiff agreed to accept a commission of $500 the trade would not be made. The plaintiff agreed to it and so the trade was made, and in that way the terms of the written contract were modified by an executed oral agreement on which the parties relied and acted. The plaintiff received all of the $500 excepting $17.54, which defendant offered to pay without a suit and for which the plaintiff recovered a verdict and judgment.

There was some dispute concerning the conversation on the long-

distance phone, but the clear preponderance of evidence is in accordance with the verdict. Thus it appears the plaintiff has had his $500 of easy money, which was much the same as money found, and it was in accordance with his agreement. Certain it is there was no reason for this suit and no reason for the appeal.