**SIGNAL DRILLING COMPANY, INC., a corporation, Plaintiff/Appellant,**

v.

**LIBERTY PETROLEUM COMPANY, Defendant/Appellee.**

No. 9052.

Supreme Court of North Dakota.

Feb. 13, 1975.

Pearce, Anderson, Pearce, Thames & Pearce, Bismarck, for plaintiff/appellant.

Conmy, Rosenberg & Lucas, Bismarck, for defendant/appellee.

SAND, Judge.

This case involves the question of whether the appellee, Liberty Petroleum Company (hereinafter Liberty), is liable in the amount of $11,043.33 owing to the appellant, Signal Drilling Company, Inc. (hereinafter Signal), for costs incurred by Signal in drilling an oil well in Slope County.

Signal filed suit in the district court of Burleigh County against Liberty, Nevada Empire Corporation, D. G. Hamilton, Sam Day, and Denyse R. Liberty, alleging that each of said defendants was obligated for the amount owing to plaintiff because the relationship of mutual agency existed between all the defendants.

After a trial to the court, the trial court dismissed the action as against all defendants with the exception of Nevada Empire Corporation (hereinafter Nevada), which was found liable to the plaintiff for the amount claimed.

Signal appealed the dismissal as against Liberty only.

Broadly stated, the sole issue before this Court is whether Liberty was in such a legal relationship vis-a-vis Signal's provision of drilling services as to legally require that Liberty be responsible for payment of any amount owing for those services. Corollary to this issue is the issue of what admissible and competent evidence is available to aid the court in deciding this issue.

The admissible pertinent evidence adduced at trial established the fact that on September 2, 1970, Signal and Nevada entered into an agreement for the drilling of a well by Signal in Slope County, North Dakota. This agreement provided that Signal was to provide certain basic drilling materials and services sufficient to drill a well to 8,700 feet, or 150 feet into the Mission Canyon formation, whichever occurred first. The contract price for Signal's

services and materials under the agreement was $64,700.00. The agreement also provided that Nevada would place in an escrow account the basic contract price agreed upon.

In the fall of 1970, pursuant to the written agreement, Signal caused to be drilled in accordance with the contract the test well called for. After completion of the drilling, it was determined that the well was a dry hole and it was therefore plugged and abandoned.

Cost overruns incurred during the drilling of the well by Signal (apparently as a result of the cost of additional core sampling tests ordered by Nevada's geologist who oversaw the overall day-to-day operations necessitated by the drilling of the well) rendered the $75,000.00, placed in the escrow account provided by the agreement between the parties, insufficient to cover the amount owing to Signal.

At trial, Signal sought to introduce into evidence an agreement dated August 11, 1970, which provided that Liberty would pay $50,000.00 to Nevada for intangible assets; that Nevada would assign certain mineral interests to Liberty; and that Liberty would place $75,000.00 into an escrow account subject to disbursement upon receipt of proof that Nevada had obtained the drilling of an oil well meeting contract specifications on Liberty's behalf.[1]

The defendants objected to the admission of the agreement of August 11, 1970, on the grounds that it was rendered inadmissible by Section 9–06–07, North Dakota Century Code, which provides that "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument."

The trial court agreed with the contention of the defendants that Section 9–06–

07, N.D.C.C., rendered the agreement of August 11, 1970, inadmissible, despite Signal's contention that the agreement would forward its proofs that Nevada was acting in the capacity of agent for (or co-venturer with) Liberty at the time it (Nevada) contracted with Signal for the drilling of the well. Throughout the trial Signal sought to prove, through testimony, this alleged agency or co-venturer relationship, but the testimony was successfully objected to on the ground that it was rendered inadmissible by Section 9–06–07.

More specifically, Signal, pursuant to N.D.R.Civ.P. 43(c), made offers of proof at trial in an attempt to prove that Liberty was responsible for the amount owing either as principal of Nevada or as a co-venturer with Nevada. These offers of proof consisted of summations by Signal's trial counsel as to the substance of what the witness being questioned by him would have said had his testimony not been proscribed by the trial court for the reason that the parol evidence rule barred its admission.

Section 9–06–07, N.D.C.C., although a partial enactment of the parol evidence rule [Hanes v. Mitchell, 78 N.D. 341, 49 N.W.2d 606 (1951)], constitutes a rule of substantive law. Allgood v. National Life Ins. Co., 61 N.D. 763, 240 N.W. 874 (1932); Gajewski v. Bratcher, 221 N.W.2d 614 (N.D.1974). In *Allgood* we said in Syllabus 2:

"Where a written contract is complete, clear, and unambiguous, and contains mutual contractual covenants, or the consideration consists of specific direct promise to do or not to do certain things, such parts cannot be changed by parol, nor new terms added, in the absence of fraud, misconduct, or accident."

In Johnson v. Auran, 214 N.W.2d 641 (N.D.1974), we upheld the trial judge who

---

**1.** There is no question that the oil well drilled by Signal pursuant to its agreement with Nevada was the same well as that contemplated by the agreement of August 11, 1970, between Liberty and Nevada.

allowed the introduction of parol evidence to explain ambiguities in a written contract, explaining that the question of whether ambiguities exist in a written contract is a question of law.

In the instant case, no ambiguities exist as to the parties to the agreement entered into by Signal and Nevada so as to allow the introduction of parol evidence. The question, however, as to whether Section 9–06–07 precludes the introduction of parol evidence tending to show that one of the principals to an otherwise unambiguous contract was also acting as an agent for another party is relatively new to this court, although in Mitchell v. Knudtson Land Co., 19 N.D. 736, 124 N.W. 946, 950 (1910), we said:

> "The pivotal question in this case is whether a contract for the sale of real estate was entered into. It is found that a contract was entered into between the Casey Land Agency, acting for the plaintiff, and the defendants. Upon its face, the contract is the contract of the Casey Land Agency, and it is signed by that company, but its benefits inure to the plaintiff, although his name was not therein mentioned, and he may sue in his own name for the enforcement of it. In Pomeroy on Contracts (2d Ed.) § 89, the doctrine is stated as follows: 'When the agreement is executed by an agent in his own name, he appearing to be the contracting party, the requisite as to parties is complied with. The principal may maintain a suit and enforce the contract, and it is immaterial whether the principal was actually known during the transaction or whether the other party supposed that he was dealing with the agent personally, entirely on his own behalf. Under the same circumstances, it is now the rule that a suit may be maintained, and the contract enforced against the principal even though he was undisclosed and unknown to the other party at the time of entering into the agreement, provided, of course, it was actually made on his behalf.' Although this is not the rule followed in some courts, we deem it sound, and many cases sustaining it are cited in the note to the above section."

In the above case, we went on to make clear that the language quoted above was not necessary for the holding and was not adopted by this court because it was decided on other grounds. Nevertheless, our observation as to the soundness of the rule seems to be verified as shown by the following quotation from Wigmore on Evidence (3d ed. 1940) § 2438, at pages 124–125:

> "The generally accepted law is sufficiently outlined in the following passage:
>
> > " '1896, Wolverton, J., in Barbre v. Goodale, 28 Or. 465, 38 P. 67, 43 P. 378: "The question is here presented whether it is competent to show by parol testimony that a contract executed by and in the name of an agent is the contract of the principal, where the principal was known to the other contracting party at the date of its execution. There are two opinions touching the question, among American authorities,—the one affirming, and the other denying; but the case is one of first impression here, and we feel constrained to adopt the rule which may seem the more compatible with the promotion of justice, and the exaction of honest and candid transactions between individuals. The English authorities are agreed that parol evidence is admissible to show that a written contract executed in the name of an agent is the contract of the principal, whether he was known or unknown; and the American authorities are a unit, so far as the rule is applied to an unknown principal, but disagree where he was known at the time the contract was executed or entered into by the parties. All the authorities, both English and American, concur in holding that, as applied to such contracts executed when the principal was unknown, parol

evidence which shows that the agent who made the contract in his own name was acting for the principal does not contradict the writing, but simply explains the transaction; for the effect is not to show that the person appearing to be bound is not bound, but to show that some other person is bound also. And those authorities which deny the application of the rule where the principal was known do not assert or maintain that such parol testimony tends to vary or contradict the written contract, but find support upon the doctrine of estoppel; it being maintained that a party thus dealing with an agent of a known principal elects to rely solely upon the agent's responsibility, and is therefore estopped to proceed against the principal.

' "The underlying principle, therefore, upon which the authorities seem to diverge, is the presumption created by the execution of the contract in the name of the agent, and the acceptance thereof by a party, where the principal is known. Is this presumption conclusive, or is it disputable? Without attempting to reconcile the decisions, we believe the better rule to be that the presumption thus created is a disputable one, and that the intention of the party must be gathered from his words, and the various circumstances which surround the transaction, as its practical effect is to promote justice and fair dealing.—The principal may have recourse to the same doctrine to bind the party thus entering into contract with his agent. Parol evidence, however, is not admissible to discharge the agent, as the party with whom he has dealt has his election as to whether he will hold him or the principal responsible." ' "

And, in 3 Jones on Evidence (1972) § 16:21, at page 128, the nature of the principle that parole evidence may be used to prove the true capacity of a signatory party to a written contract is stated as follows:

"Although one who signs an agreement without indicating in any way that he acts as agent for a principal cannot in order to escape liability prove by parol that he was merely acting for another, yet his status as agent may be proved for the purpose of binding the principal, or for the purpose of giving the principal the benefit of the contract.

"For the purpose of escaping liability the evidence is rejected because it clearly contradicts the written instrument, but for the other purposes last above mentioned the evidence is received because the testimony does not change the written instrument, but merely identifies the person who is charged or benefited thereby."

In accord is Frohlich v. Metropolitan Chemical Company, 61 Wash.2d 66, 377 P.2d 443, 446 (Wash.1962), wherein the Washington Supreme Court stated:

"We have held, however, that the parol evidence rule does not prevent the introduction of oral testimony to show that a contract executed by and in the name of an agent is, in fact, the contract of the principal. The oral evidence does not contradict the writing because the agent remains bound by the contract, and the effect is merely to show that by virtue of the law of agency his signature also binds another. First National Bank of Kennewick v. Conway (1915), 87 Wash. 506, 512, 515, 151 P. 1129; Belt v. Washington Water Power Co. (1901), 24 Wash. 387, 393, 64 P. 525; accord, Genova v. Johnson (1958), 213 Or. 47, 53, 54, 321 P.2d 1050; Restatement (Second) Agency, § 149 (1958); 2 Williston, Contracts, §§ 295 to 377 (3d ed. 1959)."

■ We hold that Section 9–06–07, N.D. C.C., does not bar introduction of parol evidence for the purpose of proving that the liability of one who signed a contract as a

principal thereto was in actuality an agent of another when the purport of such evidence is to establish the liability of the alleged non-signing principal. Such parol evidence is, of course, not admissible to exculpate principal signatories to the written contract.

In Schuh v. Allery, 210 N.W.2d 96, 99 (N.D.1973), this Court said:

"We believe that a trial judge, in a nonjury case, should ordinarily admit all evidence which is not clearly inadmissible. A judge who is competent to rule upon the admissibility of evidence can distinguish in his own mind, when deliberating his ultimate decision, between evidence which is admissible and evidence which is not admissible. The introduction of allegedly inadmissible evidence in a nonjury case will rarely be reversible error, and it may often avoid a possible reversal in cases where this court, on appeal, holds that the evidence is admissible."

■ The trial court therefore erred in sustaining objections to the admission of parol evidence, the objective of which was to establish that Liberty was the principal of its agent Nevada or that both were engaged in a joint venture when the latter entered into the drilling contract with appellant Signal.

■ After concluding that the trial court erred in excluding the parol testimony and other parol evidence relating to Liberty's possible legal liability on the claim in question, we scrutinized the record of the offers of proof made at trial for the sole purpose of determining whether the exclusion of such evidence was prejudicial to Liberty. Although Signal's counsel admitted upon oral argument before this Court that its offers of proof at trial were incomplete and deficient, especially as to the industry's custom and practice, which he claimed would militate toward a finding of legal liability for Signal's claim as against Liberty, we note that this prevented a more complete offer. We hold that claim of error is sufficiently preserved.

We are also cognizant that mere offers of proof are generally not subjected to nor does the court have the benefit of adversary proceedings and scrutiny, such as cross-examination and rebuttal. Any effort to make any findings of fact or conclusions of law on the offered evidence could be highly prejudicial under these circumstances.

■ After having made the observation as to the offers of proof we find it appropriate to make further comment on Rule 43(c) of the North Dakota Rules of Civil Procedure. The unofficial commentaries, paragraph 3, Offer of Proof, are as follows:

"Rule 43(c) makes it mandatory that in a court-tried case, the court shall take and report the evidence in full (presumably questions and answer form). In the jury-tried case, it is up to the court's discretion as to whether the court allows the attorney to not only state what is intended to be shown, but also to actually ask the questions and have the witness answer out of the hearing of the jury."

The texts by Barron & Holtzoff and Wright & Miller do not have a comparable commentary. Neither has this court had occasion to address itself to this particular problem. This observation is made solely for the purpose of calling attention to the possible construction of Rule 43(c). In making this observation the court is not adopting the commentary. We believe that the circumstances of each case would be the controlling factor.

We therefore vacate the judgment of dismissal as against Liberty and remand the case to the trial court for the taking of further evidence consistent with this opinion as to the legal relationship between the parties to this appeal with reference to the claim of Signal and for a further disposition by the trial court as may be appropriate.

In vacating the judgment of dismissal and remanding this case we are not in any manner suggesting or directing what findings or conclusions this court should reach after it has heard all of the evidence submitted.

ERICKSTAD, C. J., and PAULSON, PEDERSON and VOGEL, JJ., concur.