CARGILL, INC., Plaintiff-Appellant,

v.

Patrick J. KAVANAUGH,
Defendant-Appellee.

Civ. No. 9069.

Supreme Court of North Dakota.

April 4, 1975.

Haugland & Heustis, Devils Lake, for plaintiff-appellant; argued by John C. Haugland, Devils Lake.

R. C. Heinley, Carrington, for defendant-appellee.

SAND, Judge.

Plaintiff Cargill appeals from a judgment in its favor on the basis that such judgment is insufficient because improperly predicated, and from the trial court's denial of its motion for modification of judgment.

The parties are in agreement on the following facts: That

On October 20, 1972, the appellant Cargill entered into a written contract to buy 7,500 bushels of # 1 hard amber durum wheat from the appellee Patrick J. Kavanaugh, a farmer.

The terms of that written contract provided that Kavanaugh was to deliver said wheat to Cargill at its Lakota, North Dakota, elevator between June 1, 1973, and June 15, 1973, and that Cargill was to pay for said wheat $1.97 per bushel.

The contract further provided that should Kavanaugh default in delivery, he [Kavanaugh] " . . . agrees to pay to [Cargill] as damages for default in delivery hereunder the difference between the above specified price [i. e., $1.97 per bushel] and the highest market price . . . on the date of default."

Kavanaugh defaulted in delivery as provided for in this contract.

In his answer and at the pre-trial conference Kavanaugh admitted he was in default on the written contract and offered to settle the matter on the basis of the liquidat-

ed-damages clause contained in that contract. Cargill refused this offer of settlement and, at trial before the district court, sought to show that the parties had either orally agreed to modify the written contract so as to extend the delivery date (date of default) or that the parties had agreed to a new oral contract differing only from the superseded written contract in terms of a later delivery date (date of default).

The trial judge, after having heard the evidence in the matter, promulgated as one of his findings of fact, in Paragraph VII, the following:

"That the plaintiff [Cargill] has failed to establish that there was an extension of that [written] contract [of October 20, 1972] beyond the 15th day of June, 1973."

Cargill challenges this finding of fact and requests this court declare the finding of fact to be otherwise.

■ It is so well settled as not to require citation that the scope of our review as to the findings of fact of a trial judge is limited by rule 52(a), North Dakota Rules of Civil Procedure, which provides, in pertinent part, that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

In In re Estate of Elmer, 210 N.W.2d 815, 820 (N.D.1973), this court, attempting to elucidate the term "clearly erroneous," said:

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948). The mere fact that the appellate court might have viewed the facts differently, if we had been the initial trier of the case, does not entitle us to

reverse the lower court. Nee v. Linwood Securities Co., 174 F.2d 434 (8th Cir. 1949); Wright & Miller, Federal Rules of Civil Procedure, Sec. 2585, p. 729 et seq."

With these tenets in mind, we have thoroughly reviewed the record in this case and find that the evidence of record in support of Cargill's assertion that the date of default was July 27, 1973 (when the relevant market price was $5.82 per bushel), rather than June 15, 1973 (when the relevant market price was $2.70 per bushel), consists of the testimony at trial of Mr. Kavanaugh and of Orville Peterson, Cargill's Lakota elevator manager.[1]

The gist of the testimony, even when we look at it in a light most favorable to Cargill, which we are not required to do, is as follows:

In May 1973, Orville Peterson [hereinafter Peterson] told Kavanaugh that he could bring in the grain provided for in the contract at any time as there was elevator space available to handle it. Kavanaugh asked how much it would cost to buy his way out of the October 20, 1972, contract and Peterson quoted an approximate figure.

In early June and on June 10, 1973, Peterson told Kavanaugh he could begin delivering the wheat. Kavanaugh's response of June 10 was that he was busy with Spring's work and, implicitly, couldn't deliver the wheat at that time or in the near future.

After June 15, 1973 (the last day Kavanaugh could deliver the wheat contracted for without being in default under the written contract) Peterson contacted Kavanaugh several times about beginning to deliver the wheat but Kavanaugh was either noncommittal about doing so or had some excuse such as the fact that he was doing summer-fallowing or that he could not deliver in the rain.

1. Marge Peterson, another employee of Cargill's Lakota elevator, testified as to a conversation which she overheard on July 25, 1973, but her testimony as to that conversation was essentially the same as that of Orville Peterson.

Finally, on July 24, 1973, after Peterson contacted Kavanaugh and requested him to deliver the grain, Kavanaugh, for the first time, said that he could not deliver the grain for the contract price and would like to see if things could be settled out somehow. Kavanaugh asked Peterson to contact his superior so some sort of settlement could be worked out. Cargill states that this was the first inkling that it had that Kavanaugh did not intend to honor the contract.

On July 25, 1973, Kavanaugh went to the office of Orville Peterson, where the latter asked him to sign an extension of the delivery date specified in the original contract. Kavanaugh refused to do so. Peterson also asked him to start delivering the grain but Kavanaugh said that he couldn't do so while it was raining. Peterson then gave Kavanaugh until July 27 to deliver the grain.

On July 27, Kavanaugh said he would not deliver the grain for the original contract price and he was advised by Peterson that the contract was to be considered canceled.

We will examine these facts to determine whether the contentions of the appellant Cargill that the delivery date specified on the written contract was extended pursuant to an oral agreement to modify the written contract or whether (and this point seems to be more strongly contended by the appellant) the written contract was superseded by a later oral contract between the parties to deliver the grain have any substantial basis in law.

But because of appellant's contention that the written contract was modified in part, we must first take cognizance of an applicable statute not cited by either of the parties, to wit, Section 9–09–06, North Dakota Century Code, which reads as follows:

"A contract in writing may be altered by a contract in writing or by an executed oral agreement and not otherwise. An oral agreement is executed within the meaning of this section whenever the party performing has incurred a detriment which he was not obligated by the original contract to incur."

In Northwestern Equipment, Inc. v. Tentis, 74 N.W.2d 832 (N.D.1956), this court held, citing Williston on Contracts, Revised Edition, Section 631, that this provision was not a mere rule of evidence but a provision of substantive law. We therefore conclude that the statute has application to the case at hand.

*Northwestern Equipment* was an action by a seller to replevin farm equipment previously sold under conditional sale contract on the basis of a breach of contract by the buyer. The buyer counterclaimed and, in pertinent part, alleged that seller's representatives promised, after the execution of the conditional sale contract, to repair the defects in the equipment and, failing therein, the seller would take the tractor back.

In resolving the argument of the buyer, this court quoted the first sentence of Section 9–0906, N.D.R.C. 1943 (the provisions of which are identical to our present Section 9–09–06, N.D.C.C.), and said:

"These rules [Sections 9–0607, N.D.R.C. 1943 and 9–0906, N.D.R.C. 1943] are not rules of evidence but of substantive law. Williston on Contracts, Revised Edition, Section 631. The jury might find as a fact that the oral promises [to repair or take back] were made but their finding in that respect could not change the [written conditional sale] contract. *The legal effect of the oral testimony is for the court to determine as a matter of law.* In this connection it should be noted that the plaintiff did subsequently agree in writing to make certain repairs on the tractor and performed that agreement. In that respect only was the original contract of sale modified." Northwestern Equipment v. Tentis, 74 N.W.2d 832, 839. [Emphasis supplied.]

Several of our earlier opinions expounded on the meaning of the term "executed oral

agreement" as found in Section 9–09–06, N.D.C.C. A synopsis of two of those opinions will adequately provide an overview as to the meaning of the term. Thus, in Ley v. Gulke, 58 N.D. 727, 227 N.W. 222, 223 (1929), where a housebuilder sued to recover the cost of building a house for the defendant pursuant to a written contract, this court held that oral evidence that the parties had agreed subsequent to execution of the written contract to modify it by requiring certain additional work by the builder which was done was properly considered by the trial court because

> "Section 5938, Compiled Laws of 1913 [now Section 9–09–06, N.D.C.C.], provides that a contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise. In so far as recovery has been had for extra work performed, the parol agreement under which it was performed—if such existed—was in each instance executed. The plaintiff does not rely upon an executory parol agreement. See Quinlivan v. Dennstedt Land Co., 39 N.D. 606, 168 N.W. 51, and cases therein cited."

Similarly, in Reitman v. Miller, 78 N.D. 1003, 54 N.W.2d 477 (1952), where this court, by a 3-to-2 majority, stated in syllabus paragraph 2 that

> "A written lease complete in itself may be altered by a subsequent independent oral agreement and such oral agreement, if executed, is binding upon the parties."

and held that the trial court could properly instruct as to the enforceability of an oral agreement seemingly modifying the terms of a prior written farm lease between them where a third party pursuant to the subsequent oral agreement had already performed by doing the threshing of leasehold grain agreed upon as consideration for the oral agreement.

■ In the instant case, if appellant Cargill's theory that the written contract was

modified, at least as to delivery date, by subsequent oral agreement between the parties, is to remain tenable, we would have to find that the oral agreement was "executed" as contemplated by Section 9–09–06, N.D.C.C. The question is not merely whether an oral agreement was made, but also whether or not it was executed. We are unable to find that Cargill "has incurred a detriment [pursuant to any oral agreement] which [it] was not obligated by the original contract to incur." Further, Cargill could in no way be construed as a "party performing" under an oral agreement, since it has in no way changed its relative position with Kavanaugh as a result of the alleged oral agreement.

■ Thus, proof of an executed oral agreement altering the written contract having failed, we are required by statute to rule that the evidence tending to show such alteration is not available for our consideration as to the incidents of such alteration, if any were effectuated.

However, the appellant Cargill also urges that a new oral agreement was made which did not merely alter the prior written contract but superseded it *in toto*. We have thoroughly examined the facts which the appellant points to as buttressing this argument but we are convinced that the contention is not tenable. We believe a mere recitation and brief discussion of the elements which meld to form a legally enforceable contract, together with the facts in the instant case, will reveal the fallacies in the appellant's argument.

■ Basically, Hornbook law (*i. e.*, Simpson on Contracts) tells us that a contract requires an offer, and acceptance of that offer, and mutual acceptance and understanding of the offeror and offeree as to the terms of the legally enforceable obligation thus incurred. In the instant case, the breach by Kavanaugh of the written contract to deliver occurred on June 15, 1973. It was not until July 8, 1973, that Cargill was able to contact Kavanaugh as to when

he (Kavanaugh) would deliver the grain. We presume that it must have been on this date or on some other date in July 1973 when Cargill contacted Kavanaugh about delivery of the grain, that Kavanaugh, as contended by Cargill, "accepted" this "offer" to enter into a contract to deliver grain of the same grade, in the same amount, at a future date, and at the same price as provided by the written contract.

■ We find this contention untenable, both for the element of solicitude transformed into requests or proposals on Cargill's part, which seems to be its sole support, and for the reason that the elements making up a legally enforceable contract are so utterly lacking in the situation as outlined. We cannot transmute an equivocal "maybe" into an agreement to deliver grain at some unspecified later date, presumably at the original price, nor can we infer an intent on the part of Kavanaugh to enter into a legally enforceable agreement on the basis of equivocations and taciturnity.

■ Lastly, our continuing discussion (by no means definitive) on Hornbook law requires that we consider the aspect of mutual consideration for any asserted independent mutual oral agreement. After having thoroughly scrutinized the record, we find no mutuality of consideration such as would allow us to find the existence of a legally binding independent oral agreement.

Certainly the consideration and benefit flowing from Kavanaugh to Cargill as the result of any binding subsequent oral agreement would be considerable because Cargill would obtain the grain promised by the oral agreement for a sum substantially below the market price at the time of its delivery or, as liquidated damages, the difference between the market price at the time of default in the subsequent delivery date and the price provided for in the subsequent oral agreement in the event of a second default in delivery. But there is no consideration flowing from Cargill to Kavanaugh to support Cargill's theory of a subsequent oral agreement embodying the same subject matter.

We are aware, of course, that it could be argued that Cargill's implicit agreement to forbear suit for the liquidated damages under the prior written agreement is sufficient consideration to support the asserted subsequent oral agreement. (Lest the reader be misled, we are only postulating the existence of a subsequent oral agreement for purposes of pointing out the legal insufficiency of such a postulation—we are merely hypothesizing the existence of such a subsequent agreement at this time.) Such an argument totally lacks merit under the circumstances present in the instant case. We find it difficult to believe and there is no evidence that Kavanaugh would enter into a subsequent oral contract totally to his detriment. The situation at the time of the asserted subsequent oral agreement was this:

The relevant grain price had gone up apace and was over $5.00 per bushel.

Under the written contract between the parties, which was breached by Kavanaugh on June 15, 1973, Kavanaugh had agreed to accept the sum of $1.97 per bushel.

The market price at the time of the breach of the written contract was $2.70 per bushel.

The liquidated-damages clause in the written contract provided that in the event of breach Kavanaugh would have to pay the difference between the contract price and the market price at the time of breach.

Thus, Kavanaugh on or after July 8, 1973 (which date is the first date that he could have entered into a subsequent oral contract), would have suffered only detriment by entering into an oral agreement reflecting the same price terms when he could have, alternatively, paid the liquidated damages provided for in the written contract through sale of the grain in July 1973

at the then going price and retained a subsequent profit for himself as a result.[2]

Cargill also argued and contended that Kavanaugh's breach of the written contract constituted a breach of the "obligation of good faith" imported by Section 41–01–13, N.D.C.C., which provides that:

> "Every contract or duty within this title imposes an obligation of good faith in its performance or enforcement."

■ Appellant's argument in this regard is that Kavanaugh, after breaching the written contract, continued to transmit ambiguous signals that he might honor it despite the breach. Such actions on the part of Kavanaugh, however, had nothing to do with any breach of "an obligation of good faith in [the contract's] performance or enforcement," rather such actions perforce occurred after the contract had been breached. Although Kavanaugh's breach of the written contract may serve as an indication that he may not have acted most honorably in the matter (as alleged by the appellant), we cannot hold that he (Kavanaugh) had a duty under the written contract to abstain from the rendering of ambiguous responses to ambiguous requests for delivery.

Cargill appears to be contending that Kavanaugh breached the obligation of good faith by not seriously negotiating a new contract or agreement. Section 41–01–13 does not apply to such situations. Cargill has failed to establish that this statutory provision applies to the transactions in question and therefore its contention in this respect cannot be seriously entertained.

■ We further believe that Cargill's request that this court invoke its equitable powers and find that equity requires the finding or imposition of a subsequent oral agreement in order to do substantial justice between the parties and prevent Kavanaugh's unjust enrichment is ill-advised in light of the circumstances. First, it was Cargill that prepared and proffered the form for the written contract. A contract prepared by one party (unless the product of negotiation) will be construed against that party when ambiguities exist which must be resolved by construction. (See § 9–07–19, N.D.C.C.) Farmers Union Grain Terminal Ass'n v. Nelson, 223 N.W.2d 494 (N.D.1974). Here, Cargill prepared a contract which provided for liquidated damages in the event of breach by the other party. No alternate method of computing damages was set forth and, under the circumstances, the liquidated-damages clause must be upheld as the exclusive measure of computing damages for breach. Farmers Union Grain Terminal Ass'n v. Nelson, *supra*. Since Cargill alone set the damages in event of breach without the intercession of Kavanaugh in those particulars, it can now hardly be heard to argue that the application of those terms has caused them an onerous loss, especially in light of the fact that the incurred loss resulted from its own failure to mitigate its damages.

■ We believe that a quotation from the nineteenth century English philosopher, Jeremy Bentham (the founder of Utilitarianism) is apt in this regard: "A fixed penalty is a license in disguise." *Last Epigrams and Sayings*, A Bentham Reader, p. 363 (Edited by Mary Peter Mack, 1969). Aside from the fact that the instant action sounds in contract, the exercise of this court's equitable powers would be inappropriate under the circumstances because there exists no showing of unjust enrichment, fundamental unfairness, or miscarriage of law requiring the intervention of equity.

■ We hold therefore that there is no sufficient showing as a matter of law that the parties entered into an independent oral agreement of which this court can take judicial cognizance. Further, we hold that

---

**2.** The latter alternative is precisely what occurred although the chronological sequence is reversed.

the trial court's finding that no oral agreement extending the delivery date of June 15, 1973 (as provided for by the written contract) was made is not clearly erroneous.

Aside from the issues disposed of by our holdings *supra*, the appellant has posited that the trial judge erred in excluding testimony concerning prior transactions between the parties. The appellant urges that the trial judge failed to take proper cognizance of the relevancy of a portion of Section 41–01–15, N.D.C.C., which provides as follows:

> "*Course of dealing and usage of trade.* —1. A course of dealing is a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct."

Appellant sought to introduce copies of certain documents at trial which purported to be copies of deferred grain sale contracts executed between Cargill and Kavanaugh in previous years. Although these copies were excluded from introduction into evidence, we note that Kavanaugh testified that only one of these prior transactions involved a prior deferred sale. Other testimony was to the effect that Kavanaugh had been late on one prior occasion in delivering grain as per the scheduled date on the contract.

■ We believe that the purport of Section 41–01–15(1), N.D.C.C., is to assist the court by allowing evidence as to those matters in which the basic contract is lacking or as to which the basic contract is ambiguous. Such does not appear to be the case here.

■ Furthermore, the appellant has made no offer of proof as to the testimonial evidence it would have adduced. This court is unable to review the issue in the absence of such offer of proof. Hefty v. Aldrich, 220 N.W.2d 840 (N.D.1974). Also see, Signal Drilling Company, Inc. v. Liberty Petroleum Company, 226 N.W.2d 148 (N.D.1975), for a discussion of offers of proof.

After the trial in the instant case, the appellant filed within ten days after the judgment therein a "motion for modification of judgment." Said motion was based upon an affidavit of appellant's trial attorney asserting that newly discovered evidence existed which required a re-examination of the findings, conclusion, and judgment of the trial court.

Although the appellant sought to predicate this motion upon Rule 60(b), N.D.R. Civ.P., the language of Rule 60(b)(2) stating that "[The court may relieve a party from a judgment on the basis of] (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)" precludes reliance upon Rule 60(b) and requires a referral to Rule 59(b), the subject matter of which deals with grounds for new trial. Kavanaugh resisted the motion on the grounds that it was without merit or was improper under any of the rules of civil procedure.

The sole ground for a new trial set forth in the motion is that referred to in Rule 59(b)(4), N.D.R.Civ.P., to wit:

> "4. · Newly discovered evidence material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial."

The question before us is whether the trial judge abused his discretion in denying the motion for a new trial.

■ In denying the motion, the trial judge made no finding as to whether the evidence in support thereof was "Newly discovered evidence . . . which . . could not with reasonable diligence [on the part of the presenting party] have [been] discovered and produced at trial." By way of comparision, this court in Hefty v. Aldrich, 220 N.W.2d 840, 846 (N.D.1974), based its affirmance of the trial judge's denial of a similar motion, on the grounds "that the evidence was not newly discovered and that there was a lack of due diligence in present-

ing it, and therefore no relief is available under either Rule 59(b)(4) or Rule 60(b)(4) relating to newly discovered evidence"; whereas in the instant case the trial judge apparently bypassed this determination and grounded his denial of the motion on the ground that the cause for the motion (newly discovered evidence) would not "materially [affect] the substantial right of the [moving] party." Rule 59(b), N.D.R.Civ.P.

The alleged newly discovered evidence received by appellant's trial counsel from appellant's Minneapolis corporate counsel after the trial had been completed consists of four documents, to wit:

(1) A letter dated July 26, 1973, from Kavanaugh to Cargill asking for the market price of June 15, 1973, as computed by Cargill;

(2) A document denominated "invoice," dated July 27, 1973, on which computation of default damages has been made indicating that Kavanaugh is liable for the difference between the relevant market price on July 27, 1973 ($5.78 per bushel) and the contract price of $1.97 per bushel, which difference equals $28,605.00;

(3) A memorandum dated July 28, 1973, prepared by either Orville or Marge Peterson, or both, stating their recollections as to the dates on which they contacted Kavanaugh relative to delivery of the grain; and

(4) A letter dated July 30, 1973, from Orville Peterson to Kavanaugh indicating that Cargill considered Kavanaugh to be in default as of July 27, 1973, and indicating that Cargill considered that date to be the date of default for the reason that they had exercised an option in the written contract providing that if Cargill's elevator was "unable to receive grain on the final delivery date . . . specified, said date may be extended, at Buyer's option, for not more than sixty (60) days." [3]

As the trial judge noted in his memorandum decision denying the motion, the last three of these enumerated documents are merely self-serving, whereas the first, although not self-serving, adds nothing to the testimony adduced at trial. We concur, and therefore hold that the trial judge did not abuse his discretion in denying the motion.

The judgment of the district court is affirmed.

ERICKSTAD, C. J., and PEDERSON, PAULSON and VOGEL, JJ., concur.

---

3. This point was properly disposed of by the trial judge's memorandum decision denying the motion for a new trial holding that the condition precedent never existed, i. e., that the elevator never was full ("plugged") and unable to receive grain during the period when Kavanaugh's performance was required under the written contract.